STATE OF NEW JERSEY, PLAINTIFF, v. GEORGE HORTON, DEFENDANT.

APPEAL OF HERBERT F. MYERS, Jr., AND HERBERT KORANSKY, ASSIGNED COUNSEL.

Argued October 10, 1960—Decided April 10, 1961.

*Mr. James A. Major* argued the cause for appellants Herbert F. Myers, Jr. and Herbert Koransky.

*Mr. Milton T. Lasher* argued the cause for respondent County of Bergen.

The opinion of the court was delivered by

HALL, J. This appeal challenges as inadequate the compensation awarded to attorneys assigned by the Bergen County Court to represent an indigent defendant on the trial of his indictment for murder. Resolution of the question turns on the scope and meaning of "reasonable compensation," ordered by our rules to be allowed for legal services to indigents "in cases of murder" (*R. R.* 1:12–9(d)) and directed by statute (*N. J. S.* 2*A*:163–1) to be paid by the county from public funds upon the certificate of the judge fixing the amount. The issue is novel.

Herbert F. Myers, Jr., an experienced trial lawyer some 26 years at the bar, and Herbert Koransky, a younger attorney admitted about 9 years, were appointed by the trial court as defense counsel at the time defendant entered his plea of not guilty to the indictment. A law clerk was also assigned to assist them, as authorized by the cited rule. The trial commenced about two and one-half months later and continued for 14 days, of which the first three were consumed in selecting the jury. The defendant was acquitted and there is no question of the quality of the service rendered by appellants in a difficult case where the defendant's life was at stake.

In their applications to the trial judge for compensation, Mr. Myers sought $8,847.50 and Mr. Koransky, $7,115, a total of $15,962.50. Of this amount, $11,200 represented the request for $400 per day each for services at trial. No indication is given as to the extent of the junior attorney's actual participation in the trial. According to the affidavits submitted, investigation and preparation occupied the partial time of each attorney for the first two months after assignment (excluding a three-week period for Mr. Myers when he was out of the State) and full time for the two weeks immediately preceding the trial. Included were five or six court appearances on pretrial matters, as well as investigation, research and trial preparation. Unfortunately the affidavits deal only with very broad approximations of the time spent prior to trial. Apparent inaccuracy and inconsistency are demonstrated when a totalling of the hours claimed by one of the attorneys indicates a substantial excess over normal full time for the entire three months of service. The actual request for compensation for services prior to trial was made, however, on the rather incongruous basis of court appearances during that period, Mr. Myers claiming 10 such at $300 each and Mr. Koransky 7 at $200 each, totalling $4,400. In addition, payment was sought for disbursements of $247.50 and $115, respectively, most of which was related on a rather general basis to the purchase of meals and beverages during the investigation and preparation. The appendix also would indicate that the county paid bills for the charges of certain experts who served the defense.

The court allowed each attorney $1,500, pursuant to the practice in Bergen County fixing this amount as the standard fee in every murder case, regardless of whether the matter goes to trial and irrespective of the amount of work involved. The attorneys appeal directly to this court, the matter arising in a capital cause. *R. R.* 1:2–1(c). They take the position that "reasonable compensation" for representing an indigent charged with murder should be determined by the same standards as if the client were able to pay fully

and that the allowances requested, so tested, were proper and should have been granted. See *Canon* 12 of *Canons of Professional Ethics; State by Parsons v. United States Steel Corp.*, 22 *N. J.* 341, 360–361 (1956); *In re Bloomer's Estate*, 37 *N. J. Super.* 85, 94 (*App. Div.* 1955). The county, on the other hand, views the representation as one falling within the professional obligation of the bar of this State to provide legal services for indigent persons accused of crime. Consequently it urges that so-called full compensation is neither intended nor justifiable, that the sum to be allowed in any case is a matter entirely within the discretion of the trial court and so the amounts awarded here should not be disturbed.

From very early days New Jersey has considered the matter of counsel for an indigent criminal defendant as one of absolute right under state law. *State v. Ballard*, 15 *N. J. Super.* 417, 420 (*App. Div.* 1951), affirmed 9 *N. J.* 402 (1952). Thus, unlike many other jurisdictions, our requirements have long gone beyond those laid down by decisions of the United States Supreme Court in recent years making appointment an essential of due process under the Fourteenth Amendment in capital cases, *Powell v. State of Alabama*, 287 *U. S.* 45, 53 *S. Ct.* 55, 77 *L. Ed.* 158 (1932), and a similar requisite to assure a fair trial in an increasing variety of non-capital situations. *Townsend v. Burke*, 334 *U. S.* 736, 68 *S. Ct.* 1252, 92 *L. Ed.* 1690 (1948); *Blackburn v. State of Alabama*, 361 *U. S.* 199, 80 *S. Ct.* 274, 4 *L. Ed.* 2d 242 (1960); *Hudson v. State of North Carolina*, 363 *U. S.* 697, 80 *S. Ct.* 1314, 4 *L. Ed.* 2d 1500 (1960); *McNeal v. Culver*, 365 *U. S.* 109, 81 *S. Ct.* 413, 5 *L. Ed.* 2d 445 (1961); *Legal Aid to Indigent Criminal Defendants in Philadelphia and New Jersey*, 107 *U. Pa. L. Rev.* 812, 815–817 (1959).

The right of the indigent in this State to be furnished counsel had its origin in a statute passed March 6, 1795—the first enactment on the subject in the country. Trebach, "The Indigent Defendant," 11 *Rutgers L. Rev.* 625, 629

(1957); *Beaney, The Right to Counsel in American Courts* 21 (1955).[1] The act specified that "the court, before whom any person shall be tried upon indictment, is hereby authorized and required to assign to such person, if not of ability to procure counsel, such counsel, not exceeding two, as he or she shall desire, to whom such counsel shall have free access at all seasonable hours." *Paterson, Laws* 162 (1800). The later constitutional provision (*Const.* 1844, *Art.* I, *par.* 8, repeated in *Const.* 1947, *Art.* I, *par.* 10) that "In all criminal prosecutions the accused shall have the right * * * to have the assistance of counsel in his defense" was undoubtedly given scope and meaning by the earlier statute and in turn served to add an organic basis to the right.[2] The statute remained on the books in substantially the same form (*R. S.* 2:190–3) until 1952. Since it covered practice and procedure committed by the 1947 *Constitution* to the rule-making power of this court, it was not enacted in the revision of *Title* 2 of the *Revised Statutes*.

The rules replacing the statute in implementation of the constitutional guarantee extend its scope and facilitate its exercise in an effort to bring closer to attainment the essential goal of equal justice for all. In their present form it is obligatory "where a person charged with crime appears in any court, without counsel" for the judge to "advise him

---

[1] Beaney observes: "As late as 1800 it seems probable that only in New Jersey, by statute, and in Connecticut, by practice, did the accused enjoy a full right to retain counsel, and to have counsel appointed if he were unable to afford it himself." (at *p.* 21.) Even today, there are still a number of states which have no requirement of counsel in non-capital causes.

[2] The provision of *Art.* XVI of the first *Constitution* (1776) "That all criminals shall be admitted to the same privileges of witnesses and counsel, as their prosecutors are or shall be entitled to" had quite a different purpose at the time of its adoption. Colonial New Jersey followed the English rule, at least in theory, that a defendant had no right to be represented by counsel at all except, curiously, in cases of minor offenses or treason. The object of the constitutional provision was to negate the prior rule and grant the underlying right. *Beaney, op. cit. supra*, 14–22. See *Donnelly v. State*, 26 *N. J. L.* 601, 606 (*E. & A.* 1857).

of his right to counsel and of the privilege of having counsel assigned, if indigent, and assign counsel to represent him unless he elects to proceed without counsel or is able to obtain counsel." *R. R.* 1:12–9(a). See also *R. R.* 3:2–3(b), 8:3–3(b). *Cf., Jenkins v. State,* 57 *N. J. Super.* 93 (*App. Div.* 1959, reversed on other grounds 32 *N. J.* 109 (1960).

In common with the federal courts and all but two states (and certain areas in a few others), the method of furnishing counsel to indigents in New Jersey has always been the assigned counsel system. In its traditional form, followed here until fairly recently, it simply amounts to an individual designation by the particular judge of some member of the local bar to represent the defendant in the case. The unique variant in operation in this State for the past decade or so requires assignments to be made as far as practicable in alphabetical rotation from a master list of the whole bar of the county maintained by or under the direction of the assignment judge. Exceptions are cases of murder and those in which, in the opinion of the judge, the gravity of the offense warrants a special designation. *R. R.* 1:12–9(d). The difference from the traditional method rests, of course, in the systematic and coordinated procedure and participation by all members of the bar.[3]

The philosophy underlying the system has a vital relation to the question before us. Before considering it, reference may well be made to the theory behind the other methods now in use to limited extents in various parts of the country, *viz.*, the public-defender, voluntary-defender and mixed private-public systems. In the first, found in a number of urban counties and state-wide in Connecticut and Rhode

---

[3] According to a state-wide compilation made by the Administrative Director of the Courts for the court year 1959–60, 2333 attorneys were assigned by the municipal, juvenile and domestic relations, county and superior courts to represent 2672 indigent defendants. Only 160 of these attorneys, mostly in the smaller counties, were assigned more than once during the year. Although no figures are available, presumably only a small percentage of the assignments required trial service.

Island, defense is furnished by a public official with that title and sole function, paid wholly from public funds; in the second, by a voluntary organization, privately controlled and financed (as for example, the Criminal Courts Branch of the New York Legal Aid Society); and in the third, by a similar private agency but supported by public funds pursuant to governmental authorization (as in Rochester and Buffalo, New York). See *Equal Justice For the Accused* 47–53 (1959) (a study of defender systems by a special committee of the Association of the Bar of the City of New York and the National Legal Aid and Defender Association, hereinafter cited as *"Equal Justice"*); *Beaney, op. cit. supra,* 212-221. The rationale of all three of these methods is the modern concept that representation of indigent criminal defendants is a responsibility of the whole community, which has as much a stake in the preservation of fundamental legal rights as in the furnishing of other essential personal services to people unable to pay for them, and that this responsibility can be most effectively and efficiently fulfilled by an agency designed and organized for that purpose. See Hogan, "A Brief for the Indigent Defendant," 44 *J. Am. Jud. Soc'y* 175 (*Feb.* 1961); *Equal Justice* 61–62. And, it may be added, defense counsel under these methods are salaried officials or employees of the public or private agency whose compensation can never approach the basis of that of an attorney retained by a financially able criminal defendant.

The assigned counsel system, on the other hand, rests on an entirely different foundation—that of the time-honored obligation of the bar, similar to that of other professions in comparable circumstances, to defend the indigent, without compensation, when called upon. *Ruckenbrod v. Mullins,* 102 *Utah* 548, 133 *P. 2d* 325, 144 *A. L. R.* 839 (*Sup. Ct.* 1943); Annotation, 130 *A. L. R.* 1439 (1941), 144 *A. L. R.* 847 (1943). See, *contra, Knox County Council v. State,* 217 *Ind.* 493, 29 *N. E. 2d* 405, 130 *A. L. R.* 1427 (*Sup. Ct.* 1940). This obligation to see that the rights of all

individuals are protected is imposed both by the standards of the profession and the responsibility of its individual members as officers of the court. Vanderbilt, "An Experiment in the Trial of Indigent Criminal Cases," 32 *A. B. A. J.* 434 (1946); Hartshorne, "Equal Justice for All," 37 *A. B. A. J.* 104, 106 (1951); 1 *Cooley, Constitutional Limitations* 700 (*8th ed.* 1927); cf. *Powell v. State of Alabama, supra* (287 *U. S.*, at p. 73, 53 *S. Ct.*, at p. 65, 77 *L. Ed.*, at p. 172). It is given concrete form by *Canon* 4 of the *Canons of Professional Ethics*, obligatory on New Jersey lawyers (*R. R.* 1:25; *In re Rothman*, 12 *N. J.* 528, 535 (1953)):

"A lawyer assigned as counsel for an indigent prisoner ought not to ask to be excused for any trivial reason, and should always exert his best efforts in his behalf."

"The very integrity of the bar of this State presupposes that every lawyer assigned to represent an indigent defendant will discharge his bounden duty." *State v. Bentley*, 46 *N. J. Super.* 193, 203 (*App. Div.* 1957). See also *In re Application of Palumbo*, 58 *N. J. Super.* 80, 83–84 (*App. Div.* 1959). We may look with pride on the conscientious and diligent service of lawyers assigned under the New Jersey system. As one student of the subject has commented, in which we concur: "[they] have displayed, on the whole, considerable effort and commendable zeal in the defense of indigent defendants. Many of these attorneys 'consider themselves in a "fiduciary" role when the courts put the rights of a man in their trust.'" Trebach, "The Indigent Defendant," *supra* (11 *Rutgers L. Rev.*, at p. 639); Trebach, "A Modern Defender System for New Jersey," 12 *Rutgers L. Rev.* 289, 294 (1957).[4]

---

[4] The assigned counsel system, both in the traditional and New Jersey forms, has been frequently criticized on several grounds, many of which have very considerable merit from the standpoint of accomplishment of the primary object of providing a timely and thorough defense for indigents as a matter of community as well as

Despite the underlying philosophy of the system, all but six states and the federal courts make provision for some amount of compensation from public funds for judicially assigned counsel, at least in certain classes of cases. Most authorize it in all situations where counsel are appointed. New Jersey, along with nine other jurisdictions including New York, Pennsylvania and Massachusetts, limits the award to capital causes. As a matter of history, the authorization for such compensation in this State was not contained in the act of 1795 and did not appear until almost a century later. *L.* 1888, *c.* 94 amended the original statute to provide that "\* \* \* in cases of homicide, a reasonable compensation may be fixed and allowed by the presiding judge of the court before which such trial shall be had," to be paid by the county upon the judge's certificate.[5] (For reasons not apparent the amendment was reenacted by *L.* 1894, *c.* 268.) The text continued substantially the same through successive revisions until 1952 when only the direction to pay was carried into Title 2A as *N. J. S.* 2A:163–1. The judicial authority to allow compensation has become *R. R.* 1:12–9(d). This rule, in contrast to the 1888 statute, makes an allowance mandatory rather than merely permissive and, in conformity with the paying authority in

---

professional responsibility, especially in urban areas. *Equal Justice* 48–50, 63–68; *Beaney, op. cit. supra.*, 212–216; "Legal Aid to Indigent Defendants in Philadelphia and New Jersey," *supra* (107 *U. Pa. L. Rev.*, at *pp.* 832–834) ; Trebach, *supra* (11 *Rutgers L. Rev.* 625, 12 *Rutgers L. Rev.* 289) ; *Report of Junior Section of New Jersey State Bar Association Committee on Indigent Criminal Representation*, 80 *N. J. L. J.* 237 (1957). We have recently indicated the desirability of serious study, and possible revision, of our present method in the light of contemporary conditions and needs. *State in Interest of Steenback*, 34 *N. J.* 89, 103–104 (1961). None of the considerations involved, however, can have any significant bearing on the determination, under the present system, of the issue before us.

[5] It is interesting to note that the original bill did not limit compensation to homicide cases. *Senate Bills* 1888, *S*106. It was amended before passage in the Senate to the form above. *Journal of Senate, p.* 222 (1888).

*N. J. S.* 2A:163–1, applies only to charges of murder rather than all homicides and does not require the occurrence of a trial as a prerequisite.[6]

This brings us more precisely to the question at issue— the intent and meaning of "reasonable compensation" in our former statute and present rule. In view of the prevalence of the practice of allowing some remuneration to assigned attorneys, the most helpful clue is found in the measure of compensation provided in other states. Whether such be limited to capital cases or made available on defense of other crimes as well, whether fixed by statute on a *per diem* or maximum basis or left entirely to the court under an expressed standard of reasonableness or simply on the broad basis of discretion, nowhere is there the slightest indication in statute, rule or decision that the compensation is intended to be "full." In fact, everything points most strongly to the opposite.

Looking first at those jurisdictions in which dollar figures are specified, a mere examination of the authorized amounts supplies persuasive evidence. The latest compilation is set forth in the Appendix to *Equal Justice*. With particular

---

[6] Since *N. J. S.* 2A:163–1 and the rule refer only to murder cases, there is no express provision for allowance in the other capital offenses of treason against the state (*N. J. S.* 2A:148–1) and kidnapping where ransom is demanded (*N. J. S.* 2A:118–1). We have recently held also that they do not apply to a charge in the juvenile court which would constitute murder if an adult were involved. *State in Interest of Steenback, supra* (34 *N. J.*, at *pp.* 103–104). Compare the history of the matter in Wisconsin. Under a constitutional provision similar to ours, it was early held not only to be the duty of the trial court to appoint counsel for an indigent defendant, but also that the county was liable for the payment of a reasonable attorney's fee in every such case even in the absence of statutory authority. *Carpenter v. County of Dane,* 9 *Wis.* 274 (1859). The legislature then passed a statute exempting counties from such liability. *Wis. Gen. Laws,* c. 35 (1860). The court promptly held the statute invalid as beyond legislative authority, finding power in the court to order payment implied from the constitutional direction to provide counsel. *Dane County v. Smith,* 13 *Wis.* 585 (1861). Thereafter the legislature authorized payment but with a fixed maximum *per diem.*

reference to jurisdictions authorizing remuneration only in capital cases, New York is the most generous, its statute permitting an allowance for trial up to $1,500 if there be but one counsel and $2,000 if more than one. Pennsylvania has a maximum of $500 each for not more than two attorneys. Florida fixes an outside figure of $500 for trial. In Massachusetts the statute uses our terminology of "reasonable compensation," but Superior Court Rule 95 (1954) limits the amount for trial services to a total of $1,000 and provides that no award shall be made if the charge in the indictment is limited to second degree murder or if the services were performed after it appeared that a first degree conviction would not be asked. In other states where compensation is allowed only in capital cases, the authorized amounts are appreciably lower.

The pattern is similar in those jurisdictions where compensation is allowed in non-capital cases as well, whether there be separate or identical provisions for homicide matters and regardless of the basis on which compensation is calculated. For example, Illinois, in areas not served by a public defender, fixes a rate for capital causes of $15 per day up to 5 days for preparation and $25 a day for trial, with a maximum of $250 per defendant. The maximum in non-capital cases is $150. In Iowa, services in homicide are compensable at $20 per trial day, with a total figure of $10 for other felonies. Minnesota has a maximum of $25 per day per counsel, up to two, for preparation and $50 per day for services in court. In Oregon the maximum for homicide is $150 with most modest *per diem* rates for other crimes. In all felony cases Washington allows up to $25 per trial day per attorney, and a flat figure of $25 per counsel for preparation for trial or plea. Wisconsin's authority also covers all felonies at an outside figure of $25 for each half day in court and $15 per half day, up to five days, for preparation. Over all it is clear that where figures have been fixed by legislation or court rule, the award most often amounts to little more than an *honorarium*.

As the Minnesota Supreme Court very recently said: "While we realize that compensation of counsel appointed to represent indigent defendants in criminal matters is often inadequate, the duty to accept such appointment and to conduct such defense with the same diligence as if being paid privately is one resting on attorneys as members of a profession which has always been willing to provide protection for the rights of citizens." *State v. Dahlgren, Minn.,* 107 *N. W. 2d* 299, 307 (*Sup. Cl.* 1961).

Even in the 15 states like New Jersey where an indefinite standard of reasonableness or judicial discretion is prescribed, there is no inkling of any intention that compensation be fixed on the same basis as in private transactions between counsel and solvent clients. This was the conclusion of the California Supreme Court in the only reported case squarely dealing with the subject which research has disclosed. *Hill v. Superior Court,* 46 *Cal. 2d* 169, 293 *P. 2d* 10 (*Sup. Ct.* 1956). That state has a statute similar to our rule, but applying to assigned defense of all crimes. The obligation of the attorney to defend the indigent is there expressly imposed by the state's Business and Professions Code. Two attorneys, appointed to defend a man charged with murder and other offenses in a non-urban county, were allowed $500 each for services comprising preliminary hearing, arraignment, 25½ hours of preparation and 8 days of trial. They appealed the allowance as inadequate, contending, as appellants do here, that the statutory "reasonable sum" should be construed according to criteria ordinarily applied in arriving at a reasonable fee to be charged a solvent private client. The awarded amount was upheld as not unreasonable, although it was stated that an award of somewhat greater sum might have been sustained as within the discretion of the trial court. The court rejected the private client standard of compensation as inapt, since by hypothesis the indigent defendant is financially unable to employ counsel. Suggested reliance on amounts set forth in a county minimum fee schedule was also rejected since

they too were geared to private transactions. After a thorough analysis of provisions in all states prescribing either a fixed basis or a general criterion of reasonableness, the conclusion reached was that no state awarded "full" compensation. The court said:

"* * * we believe that it was intended that such compensation should be determined in the light of counsel's continuing duty to the 'defenseless' * * *; and that the more reliable guides for the determination of proper compensation for court-appointed counsel under our statute are to be found by considering the statutory provisions of other jurisdictions for compensation in such cases, and by considering the general level of compensation paid to public officers for performing legal services in the prosecution and defense of criminal proceedings." (293 *P. 2d*, at *p.* 14)

■ Our own study of the entire picture places us in general agreement with the reasoning and conclusion of the California court. Justice Depue early indicated the same viewpoint in the only published expression on the subject in this State which we have been able to uncover. It was made while he was sitting at the circuit some 70 years ago and shortly after the 1888 amendment was passed. In announcing allowances with respect to a homicide case tried before him, he commented that, although the amounts awarded were a good deal less than a private person would expect to pay, this was properly so. *State v. Smith*, 13 *N. J. L. J.* 247 (*O. & T.* 1890). We are convinced this was the fundamental intent of our original legislation and all considerations dictate that it should remain the essential basis of construction of the superseding rule. It might be added that, under our present system under which all attorneys take their turn at gratuitous indigent defense, there is even more reason for this point of view, since counsel specifically assigned to compensated cases receive credit for such service on the master list. *Cf. R. R.* 1:12–9(d).

However, the very fact that our scheme of compensation is couched in indefinite terms rather than precise monetary figures leads us to find an intent that the amount awarded should be somewhat more than the mere token or *honorarium*

appearing to be the result in many states, even though the recompense must be considerably less than what would be considered full compensation were the accused able to pay. While the philosophy of the assigned counsel system is founded on the basic obligation of the bar to render gratuitous services to the indigent, legislative authorization to make any recompense from public funds, especially where that authority prescribes a general standard keyed to reasonableness, must necessarily rest on recognition that the community too should assume some financial responsibility in the matter and that the bar should not have to carry the whole load. So long as the New Jersey assigned counsel system remains, it seems eminently sound to say that compensation more than token but less than full rate is intended in order to achieve "a desirable sharing of the economic burden between the Bar and the community" (*Equal Justice* 90), and that neither too high nor too low a rate of compensation is the goal to be sought. See *Beaney, op. cit. supra, p.* 137.

To determine what is neither too high nor too low in a given case is the task of the trial judge familiar with all the particular circumstances. Appreciation and application of the basic principles we have discussed will bring about not only fair treatment both to the assigned lawyer and the public treasury but also the desirable feature of uniformity, at least within broad areas of similarity in legal practice within the State. Our own study of practices that have been followed in the several New Jersey counties in recent years demonstrates a wide variety of approaches and results, no doubt due to the absence of any prior expression by this court. The gamut runs from the arbitrary amount, as in the county involved in the instant case and in cases elsewhere where there were pleas without trial, to the other extreme of allowances obviously much too munificent and apparently geared to a rate of compensation which might be paid by an affluent client. The latter, which grounded the appellants' requests here, we have already pointed out

to be completely unwarranted. The arbitrary approach is equally untenable for it disregards the primary consideration that compensation must be based upon the nature and extent of the services rendered, whether or not a trial ensued. It should be added that in many instances allowances clearly appear to have been made in amounts appropriate to the principles we have mentioned.

The disparity in allowances may perhaps also be attributed to a great extent to considerable variation in the manner of appointment of counsel shown by our review of current local practices. It would seem almost unnecessary to state that the only consideration in selection of senior counsel can be ability and experience at the trial bar. Appointment to defend an indigent charged with murder is a badge of distinction to a trial lawyer despite the burden it may impose and, in the light of the high traditions of the profession, cannot be declined except for most compelling reasons. Neither original designation nor the amount of the final award of compensation can ever be thought of even in the slightest degree as patronage, personal or political. Sound administration dictates that at inception, whether it be at preliminary hearing or prior to arraignment to plead to the indictment (when assignment should be made if at all possible) or after plea, only one attorney should be appointed and he should be the experienced trial lawyer destined to try the case if the matter proceeds that far. If his preliminary review and study indicate the need for assistance in factual investigation, legal research and the like or the probability of trial he may then request the court to appoint a young lawyer of capacity and industry to aid him. The purpose is to lift some of the burden of time-consuming detail from the shoulders of the senior, not to have duplication of services by two attorneys doing the same work together. Needless to say, the junior's compensation will be fixed at a lower rate. It may also be observed that where there are multiple defendants, to be tried together and not having conflicting interests, a single

trial attorney for each, with one junior aiding all, will ordinarily prove sufficient.

A word should be said about the matter of out-of-pocket expenses of defense, including expenditures of the assigned attorney himself. Customarily, and we think properly so, the reasonable costs of necessary items such as experts, whether witnesses or not, medical examinations, scientific tests, photographs, depositions and transcripts, and, in essential circumstances, professional investigation, have been ordered paid from public funds by trial courts. The constitutional obligation to furnish counsel to an indigent can sensibly only be construed to include as well that which is necessary to proper defense in addition to the time and professional efforts of an attorney and we have no doubt of the inherent power of a court to require such to be provided at public expense. *Cf. Griffin v. People of State of Illinois,* 351 *U. S.* 12, 76 *S. Ct.* 585, 100 *L. Ed.* 891 (1956). In order that there may be assurance such expenditures are both necessary and reasonable, they should not be incurred, however, without advance authorization of the court granted after formal application. We think the assigned attorney is also entitled to receive reimbursement on the same theory for his reasonable and necessary miscellaneous out-of-pocket disbursements not falling within the more extensive categories mentioned. We have in mind not those items like office stenographic and clerk services, supplies, local telephone charges, postage, meals and the like which ordinarily constitute a part of general office overhead and are not usually charged by the average attorney to the paying client, but rather things such as travelling expenses outside the local area, toll telephone costs, and incidental investigation disbursements, capable of specific itemization. Advance judicial approval should not be required for disbursements of this character which are minor in amount. While we are dealing in the instant case strictly with a situation where compensation to the attorney is authorized, we believe that what we just said as to both major expenses of defense

and miscellaneous disbursements of attorneys should have equal application where counsel is assigned to an indigent defendant charged with other than murder. Since this has not been the general practice in non-murder cases, at least as to attorneys' disbursements, the view just expressed should be considered as prospective only.

Procedurally, each attorney's application for compensation and incidental expenses should be formally made in open court on notice to the prosecutor and the county treasurer, the latter so that the guardian of the public purse may be heard, if he desires, through the county counsel. It is essential that the request be supported by proofs in affidavit form detailing the services rendered, chronology of time spent and itemization of expenses claimed, not only for the full information of the judge and the interested public officials, but also to furnish a proper record for a reviewing court. The trial judge will probably find it most appropriate, in arriving at the ultimate amount, to reach a flat figure for all services up to trial and a *per diem* allowance thereafter, which may not be the same for every trial day. For example, in some circumstances a lesser *per diem* might be indicated for those days consumed in a protracted selection of the jury. He may also well take into account, as a factor bearing on suitable *per diem* compensation, subject to the fundamentals previously discussed, the prevailing daily rate in the area for trial work.[7]

---

[7] Compensation and payment of expenses are also granted under the same criteria by this court, as a matter of practice within R. R. 1:12–9(d), for services rendered by counsel on appeal to us in indigent murder cases. Allowance will be made, however, only for the services of counsel specifically assigned by us to prosecute the appeal. Application for assignment should be made, either by the defendant *pro se* or by counsel who served in the trial court, by written motion at the time leave to appeal *in forma pauperis* is sought. Counsel who represented the defendant below will ordinarily be designated to take and present the appeal in the absence of a demonstration of special circumstances. Application for allowances should be made after the determination of the appeal by written motion in the same format and with similar notice as in the trial court.

 It is obvious from all we have said that the awards in the instant case cannot stand because they were based on an arbitrary approach without exercise of legal discretion. The amounts requested by appellants, grounded as they were on an unwarranted theory, are completely out of line. The inadequacy of their proofs of services and proper disbursements makes it impossible for us to arrive at any appropriate award and, in any event, such can best be done by the trial judge familiar with all the pertinent circumstances. We may comment that the allowance to Mr. Myers, the senior counsel, is clearly inadequate based on the length of trial alone and that to Mr. Koransky may be as well. The matter should be resubmitted to the trial court, with new and adequate papers on notice to the prosecutor and county treasurer, for redetermination under the principles here laid down.

The order appealed from is set aside and the matter remanded for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.