STATE OF NEW JERSEY, PLAINTIFF, v. HARRY DONALD-
SON, DEFENDANT.

APPEAL OF HYMEN B. MINTZ, ASSIGNED COUNSEL.

Argued September 26, 1961—Decided November 6, 1961.

*Mr. Hymen B. Mintz* argued the cause for appellant, *pro se.*

*Mr. Nicholas T. Fernicola,* Essex County Counsel, argued
the cause for respondent County of Essex (*Mr. William J.
Straub,* on the brief).

The opinion of the court was delivered by

HALL, J. The question involved here is whether an attorney assigned to represent an indigent defendant charged with murder may be allowed compensation for his services when no indictment was returned by the Grand Jury.

The defendant was brought before a municipal court in Essex County on a complaint for murder and bound over to await final determination of the cause. *R. R.* 8:3–3(c). Thereafter, while confined in the county jail pending action of the Grand Jury, he applied for assignment of counsel and the appellant, Hymen B. Mintz, Esq., was appointed specially by a county court judge to represent him. *R. R.* 1:12–9.[1] About two months later the Grand Jury returned a "no bill" (*R. R.* 3:3–8(b)) and the defendant went free. In the interim counsel had prosecuted proceedings seeking his client's release on bail and undertaken a factual investigation in preparation for defense should an indictment be found. He was without doubt diligent and conscientious in carrying out his assignment. The County Court denied his application for compensation for these services and he appeals directly to us since the matter arises in a cause involving murder. *R. R.* 1:2–1(c).

The question presented must be considered with full appreciation that New Jersey has always employed the assigned

---

[1] *R. R.* 1:12–9(a), applicable to all criminal matters, provides that counsel shall be assigned whenever practicable before arraignment. It contemplates assignment to serve a defendant bound over while he is awaiting the action of the Grand Jury. The privilege of having counsel assigned exists in all criminal trial courts including the municipal court. *R. R.* 1:12–9(a); 8:3–3(b). When the request for counsel is made for a matter in the latter tribunal, the magistrate should communicate with the assignment judge of the county for the designation of an appropriate attorney from the master list (*R. R.* 1:12–9(e)) or by way of special appointment if the charge is murder and should assign the attorney so named. When the request is made after conclusion of the proceedings in the municipal court but before indictment, the application and assignment are to be made, as was done in the instant case, at the county level since the matter is then pending there.

counsel system for representation of indigent criminal defendants and that, under our version of that system, members of the bar are called upon to render such service without compensation as part of their professional obligation, except to the limited extent that remuneration is expressly provided for. See the discussion in *State v. Horton,* 34 *N. J.* 518 (1961). This State has never provided for compensation except in homicide cases. From the first authorization therefor in 1888 until 1948, the matter was governed entirely by statute. Since the latter date, it has been covered by both rule and legislation. See *Horton* (34 *N. J.,* at *pp.* 527–528).

The inquiry here then is not whether this court, under the constitutional rule-making power or its inherent authority, *could* itself provide for and compel the payment of remuneration in the instant situation or, if so, whether it *should,* as a matter of policy, but rather whether the pertinent rule and statute *do* so provide. The problem is analogous to that dealt with in *State in re Steenback,* 34 *N. J.* 89, 103–104 (1961), where counsel assigned by the Juvenile and Domestic Relations Court to defend juveniles charged with delinquency, which would have amounted to murder had they been adults, applied for compensation for their services at trial. Looking at the matter from the viewpoint just indicated, we held that the claim had to be rejected since there was no "murder case" within the terms or contemplation of the rule and statute.

Turning to the situation at bar, the applicable rule (*R. R.* 1:12–9(d) at the time; now *R. R.* 1:12–9(f)) reads: "In cases of murder, counsel * * * shall be assigned by the court specially and shall be allowed reasonable compensation." The present statute, enacted in the revision of 1952, provides (*N. J. S.* 2A:163–1):

"Where counsel assigned by the court to represent a defendant in a murder case has been allowed compensation by the court for his services, the sum so fixed shall be paid by the county treasurer of

the county where the indictment was found, upon presentation of a certificate of the judge, fixing and allowing such compensation."

The position of Mr. Mintz is that the terminology, "cases of murder" in the rule and "murder case" in the statute, is broad enough to cover a charge of murder on which the defendant is bound over to await the action of the Grand Jury even though no indictment is subsequently found. He further says that the legislative language referring to "the county where the indictment was found" is merely directory or descriptive of the county which is to pay the allowance rather than constituting the imposition of a condition precedent to the compensability of services.

Commencing in 1888 and down to the 1952 revision of *Title* 2 of the *Revised Statutes* of 1937, the pertinent statutory section provided not only the direction to pay attorney allowances from public funds in homicide cases but dealt as well with the right to the assignment of counsel in all criminal causes and the authority of the court to award reasonable compensation in the limited class of matters mentioned. It read (*R. S.* 2:190–3) :

"The court before which any person shall be tried upon indictment shall, if he is not able to procure counsel, assign to him counsel, not exceeding two, who shall have free access to such person at all reasonable hours. For services rendered by counsel so assigned, in cases of homicide, a reasonable compensation may be fixed and allowed by the judge of the court before which the trial shall be had, and the sum so fixed and allowed shall be paid by the treasurer of the county wherein the indictment is found, upon presentation of the certificate of the judge, fixing and allowing such compensation."

There can be no question but that under this former statute an indictment for homicide was a prerequisite to the allowance and payment of compensation for assigned counsel.

This court was granted the power to prescribe practice and procedure in all courts by rule under *Art.* VI, *Sec.* II, *par.* 3 of the *Constitution* of 1947. In the first rules adopted, in 1948, the subject of assignment and compensation of counsel was covered by then *Rule* 2:12–1 in the section deal-

ing with rules of criminal practice in the Superior and County Courts. It read:

"(a) If the defendant appears in court, without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at the trial unless he elects to proceed without counsel or is able to obtain counsel.

(b) In cases of homicide, counsel so assigned shall be allowed reasonable compensation by the court."

The scope of (b) was clarified by an amendment in 1949, changing "homicide" to "murder."

We can discern no intent by this rule to extend the right to compensation beyond the situation specified in *R. S.* 2:190-3, then still on the statute books, *i. e.,* only where a murder indictment had been returned and disposed of by "trial" in the sense of either verdict, *non vult* plea or other disposition of the indictment.

The primary purpose of the 1952 revision of *Title 2* (*Administration of Civil and Criminal Justice*) was to remove from previously enacted legislation all provisions relating to practice and procedure which had been dealt with by or were susceptible of the judicial rule-making power under the constitutional grant. Consequently the language of *R. S.* 2:190-3 dealing with the right of an indigent to assignment of counsel and when compensation for such services was to be allowed was deleted. The successor section, *N. J. S.* 2A:163-1, is therefore confined to what remained, namely, the authority of the county treasurer to pay allowances awarded in murder cases. For whatever pertinence it may have, we see no implied legislative intent thereby to extend that authority beyond the situation originally covered in full by *R. S.* 2:190-3. Any express indication leans rather the other way since reference to an "indictment" was still retained. In the light of the history, this has to mean more, as far as legislative desire is concerned, than something merely directory or constituting only a description of what county is to pay should there, for example, have been a change of venue for trial.

The subsequent development and expansion of the general subject matter of original *Rule* 2:12–1 (1948) to its present compass in *R. R.* 1:12–9 and 8:3–3(b) has not changed the situation as far as judicial intent is concerned. The language with respect to the cases in which compensation will be allowed remains substantially the same and there is nothing in the expanded and more detailed provisions about the right to and assignment of counsel indicating any purpose to enlarge the class of compensable cases.

The scope of the present rule is again to be determined in the light of the history and we conclude that it does not extend beyond the confines delineated by *R. S.* 2:190–3. We therefore hold, as in *Steenback* (34 *N. J.*, at *p.* 104), that the right to compensation arises only if an indictment for murder is returned and hence the instant situation is not a "murder case" or "case[s] of murder" within the terms and contemplation of the rule and statute.

As earlier stated, we are not called upon here to express any opinion as to whether this court could, by reason of the constitutional rule-making authority or inherent judicial power, alone and without legislative acquiescence, award and compel the payment of allowances for services of counsel to indigent defendants in situations other than the one presently specified. A small minority of other jurisdictions have reached an affirmative conclusion. The majority hold to the contrary, but, generally speaking, were not concerned with a broad constitutional grant of judicial authority in practice and procedure such as we have. See Annotations, 130 *A. L. R.* 1439 (1941), 144 *A. L. R.* 847 (1943); *State v. Horton, supra* (34 *N. J.*, at *p.* 528, n. 6). The question will not be presented unless this court should move in that direction by rule. More important and fitting in this field is a thorough policy and practical study and evaluation of our assigned counsel system in its entirety, with participation by all interested groups—bench, bar, Legislature and the public. See *State in re Steenback, supra* (34 *N. J.*, at *p.* 103); *State v. Horton, supra* (34 *N. J.*, at *p.* 526, n. 4).

The order of the County Court is affirmed, but without costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.