87 N.J. Super. 49 (1965)
207 A.2d 724
STATE OF NEW JERSEY, PLAINTIFF,
v.
RUSSELL E. RUSH, DEFENDANT.
STATE OF NEW JERSEY, PLAINTIFF,
v.
ELVERT LEE COUCH, DEFENDANT.
Superior Court of New Jersey, Burlington County Court.
Decided March 1, 1965.
*50 Mr. Martin L. Haines, assigned attorney for defendants, for the applications.
Mr. Arthur J. Sills, Attorney General of New Jersey (Mr. John J. Waldron, Deputy Attorney General, appearing), for the State of New Jersey, contra.
Mr. Herman Belopolsky, Burlington County Solicitor (Mr. Sanford Soren, Assistant County Solicitor, appearing), contra.
*51 WOOD, A.C., J.C.C.
These are criminal prosecutions in each of which the applicant, Martin L. Haines, a distinguished member of the bar, was assigned to represent the indigent defendants.
In Rush defendant was charged with armed robbery in violation of N.J.S. 2A:141-1 and 2A:151-5. He is, and was, at the time of the assignment in this case, serving a life sentence in the New Jersey State Prison. At the time of the application counsel had personally interviewed defendant at the State Prison in Trenton and had spent, according to his affidavit, three hours of time in "answering the trial list, interviewing the defendant at the State Prison, and preparing a prior motion, together with miscellaneous telephone calls and correspondence." The court deems counsel's estimate of time spent conservative. In addition, counsel incurred out-of-pocket expenses of $18 which he paid to an investigator who was successful in contacting a potential witness for the defense. To locate this witness the investigator was required to make three separate trips outside Mount Holly, the longest of which was 15 miles.
Counsel estimates his office overhead as being in excess of $15 per hour.
Subsequent to the making of this application Rush was brought to trial. The trial lasted two days and resulted in a conviction. Defendant was remanded to State Prison pending presentence investigation.
In Couch defendant is charged with carrying a concealed deadly weapon, assault with intent to kill, and atrocious assault and battery. Counsel estimates that he spent seven hours of time in the investigation and preparation of the defense of this case, and in addition incurred out-of-pocket expenses in the sum of $76.15, paid to the investigator for interviewing ten prospective witnesses and serving six subpoenas.
In each case counsel asks reimbursement of his out-of-pocket expenses and the allowance of a reasonable counsel fee for his services.
*52 The application raises the question of the proper implementation of the right of indigent defendants to representation by counsel in criminal prosecutions  a question brought sharply into focus by the landmark decision of the United States Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In that case the court held that the right of one charged with crime to the assistance of counsel in his defense applies in noncapital as well as in capital cases, and that it is a right guaranteed against infringement by the states under the due process and equal protection clauses of the Fourteenth Amendment.
Gideon v. Wainwright did not change the law of New Jersey, where the right of all persons to representation by counsel when "charged with crime" has long been recognized as basic and absolute. New Jersey Constitution 1947, Art. I, par. 10; R.R. 1:12-9; State v. Horton, 34 N.J. 518, 522 (1961). Indeed, the court "was only articulating a principle that most of those with an opinion  lawyers, judges, state officials themselves  had already recognized." Lewis, Gideon's Trumpet, p. 220 (1964).
But here counsel would have this court go beyond the fundamental precept and hold that the "right to counsel" means necessarily the right to paid counsel. He cites Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), in which the United States Supreme Court held that the due process and equal protection clauses of the Fourteenth Amendment operate to require the state to furnish a defendant convicted of armed robbery with a transcript of the trial proceedings for the purposes of appeal; and State v. Horton, supra, which, it is contended, "broadens the obligation of the state to require its payment of numerous expense items, in addition to the transcript." It is, so runs the argument, but a short step from the logic of Griffin and Horton to conclude that payment of counsel is necessary.
Counsel thus now argues that the requirement that the accused be entitled to representation by counsel carries with it by necessary implication the requirement that counsel be *53 paid for his services, and the consequent obligation of the court to order such payment.
With the proposition that counsel assigned to represent indigent defendants should be reasonably compensated for such service this court has the utmost sympathy. Nevertheless, the court is reluctantly constrained to disagree with the argument that the constitutional right of representation necessarily requires such compensation. In State v. Horton, supra, 34 N.J., at pp. 524-526, our Supreme Court discussed in some detail various methods or systems of furnishing counsel for the indigent and pointed out that public defender, voluntary-defender and mixed public-private systems of providing defense for the indigent rest on the concept that representation of indigent defendants is a community responsibility, the financial burden of which should be borne by the entire community. On the other hand, our assigned counsel system, said the court, "rests on an entirely different foundation  that of the time-honored obligation of the bar, similar to that of other professions in comparable circumstances, to defend the indigent without compensation when called upon." (at p. 525)
For generations, under this rule, counsel have diligently, ably and generously given substance to the right of indigents accused of crime to proper representation in their defense. Nor has the lack of compensation deterred them in the discharge of the often unpleasant and burdensome tasks assigned to them. Many lawyers, including present counsel, have contributed liberally not only of time but of their financial resources in making real for their indigent clients the constitutional guarantees.
The other systems above referred to have been and are being earnestly and extensively considered and discussed by the bench and bar. But to date, as a study of the cases, statutes and court rules make clear, New Jersey continues to adhere to and rely on the assigned counsel system. The system, by and large, has worked well and has gained fair and just treatment for indigents charged with crime. But the *54 population growth, the increase in crime, both in volume and in rate, and the new protections thrown about criminal defendants by our courts as the "conscience of society" has demanded greater recognition of the dignity and worth of the individual and the need to preserve his "inalienable rights," have emphasized the need for meticulous care not only in prosecuting an accused but in defending him. This has added to the burdens both of prosecutors and defenders.
Nevertheless, we in this State continue to use the assigned counsel system, the effect of which is to throw the burden of the defense of the indigent entirely upon the members of the bar. It must further be acknowledged that the burden is not shared equally by all attorneys since many of them are exempted or excused for a variety of reasons.
Thus, it falls to a small minority to carry a load which it would seem ought to be shared by all. Such a result is, I submit, most unfair to the dedicated few.
However, our Supreme Court in Horton, supra; State in Interest of Steenback, 34 N.J. 89 (1961), and State v. Donaldson, 36 N.J. 45 (1961), has expressly held and reiterated that at present there exists statutory authority to compensate counsel at public expense only in cases of murder. In Donaldson the court, in denying compensation in a murder case where counsel was assigned and performed services, but where no indictment was returned, did make this comment:
"As earlier stated, we are not called upon here to express any opinion as to whether this court could, by reason of the constitutional rule-making authority or inherent judicial power, alone and without legislative acquiescence, award and compel the payment of allowances for services of counsel to indigent defendants in situations other than the one presently specified." (at p. 50)
And the court then added:
"The question will not be presented unless this court should move in that direction by rule."
The court has thus clearly held that, in the present state of our law, an award of compensation to assigned counsel may *55 not be made except as authorized by statute or by rule. Even under the goad of the United States Supreme Court decision in Gideon v. Wainwright, supra, and more recently in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the existing system has not yet been changed. Cf. Editorial, "A New Responsibility to the Indigent?", 88 N.J.L.J. 84 (Feb. 11, 1965).
It is forcefully argued that the assigned counsel system is unfair to attorneys called on to serve under it and deprives them of certain constitutional rights. I have previously pointed out some of the more obvious injustices and inequities of the present system. But I cannot agree that attorneys' constitutional rights are violated. Every member of the bar of this State, when he takes his oath upon admission to this honorable profession, agrees to be bound by the special disciplines and high standards which circumscribe the conduct of all its members. These include the obligation to represent, without compensation, defendants in criminal cases when assigned by the court. The obligation is spelled out in R.R. 1:12-9 and in Canon 4 of the Canons of Professional Ethics, incorporated in our rules by R.R. 1:25. The obligation is one freely and knowingly undertaken as part of the responsibility which accompanies the privilege of practicing law in this State. An obligation so undertaken cannot be said to constitute a deprivation of liberty or property without due process of law, nor to be a denial of the equal protection of the law.
It is further argued that N.J.S. 2A:163-1 is unconstitutional. As to this, it suffices to say that it is not for this court to declare unconstitutional a law which has stood the test of time, has been repeatedly enforced and implemented by our Supreme Court (cf. State v. Horton, supra), and has constituted a very material protection to defendants and their counsel in murder cases. To declare it unconstitutional would only serve to deprive the bar of its protection without in any way alleviating the situation of which counsel here complains. This court has neither legislative nor rule-making power, and in the absence of the exercise of such *56 by the Legislature or the Supreme Court, has absolutely no authority to award compensation in cases such as this.
Brief reference should be made to that portion of the Supreme Court's opinion in Horton, supra, in which the court dealt with reimbursement to attorneys for out-of-pocket expenses, and added:
"* * * we believe that what we just said as to both major expenses of defense and miscellaneous disbursements of attorneys should have equal application where counsel is assigned to an indigent defendant charged with other than murder. Since this has not been the general practice in non-murder cases, at least as to attorneys' disbursements, the view just expressed should be considered as prospective only." (at pp. 534-535)
The question before the court in Horton was actually not that of the right of counsel to compensation, which was entirely clear, but rather the manner of arriving at an amount of money which would represent reasonable compensation under the circumstances. The court laid down guide lines for the making of such an award. The allusion to reimbursement in cases other than murder was in no way necessary to the decision of the case and must be regarded as dictum. Moreover, the court, as previously pointed out, has not yet seen fit to implement such a right by rule. Since authority either by statute or rule is lacking, this court must reluctantly hold that it is powerless to award any compensation to counsel  even the reimbursement to him of expenses incurred in carrying out his assignment.
The solution to the problem lies not in an action of this sort but, as the court said in Donaldson, supra, in "a thorough policy and practical study and evaluation of our assigned counsel system in its entirety, with participation by all interested groups, bench, bar, Legislature and the public."
Out of such a study should come, hopefully, a system of providing defense for the indigent which will safeguard the rights of all by providing reasonable compensation for those charged with such defense.
*57 In view of the foregoing conclusions, I deem it unnecessary to deal with the contention advanced by the State that this proceeding is, in effect, a suit against the State from which it is immune unless it specifically consents to be sued.
For the reasons stated, the present application must be denied.