138 N.J. Super. 187 (1975)
350 A.2d 319
SHIRLEY SMITH, PLAINTIFF,
v.
HERMAN THOMAS WALKER, DEFENDANT.
Superior Court of New Jersey, Essex County Court.
December 5, 1975.
*189 Mr. William J. Tamburri for plaintiff (Mr. Thomas P. Kelly on the brief).
Ms. Annamay T. Sheppard (Rutgers Urban Legal Clinic) for defendant.
ALBANO, J.D.C., Temporarily Assigned.
This is an interlocutory appeal by defendant from an adverse determination by the Newark Municipal Court of a pretrial motion to have the cost of blood-grouping tests paid by the court or the Essex County Welfare Board in an action for support, pursuant to N.J.S.A. 9:16-3.
In bringing his motion in the municipal court and on his appeal here defendant asserts that he is indigent, that due process of law mandates he have a meaningful opportunity to be heard in his defense, that blood-grouping tests are critical to his defense, and that the Essex County Welfare Board or the State or some other subdivision thereof should bear the costs of the tests. In reply plaintiff, by the Essex County Welfare Board, alleges budgetary immunity, the impropriety of an interlocutory appeal since the proceeding is a civil and not a criminal one, failure of defendant to sustain the burden of proof of his indigency, and no constitutional requirement that a government entity pay a third party for services (doctor for blood grouping tests).
This action was instituted by plaintiff Shirley Smith against defendant Herman Thomas Walker by the filing of a verified complaint pursuant to N.J.S.A. 9:16-2 et seq. in the Newark Municipal Court under R. 7:9, "Bastardy Proceedings," for the support of an illegitimate child, allegedly sired by defendant. At this point it must be noted, in passing, that while Ms. Smith is the named plaintiff, the complaint bears an Essex County Welfare Board file number *190 and was prepared by the Board, and that plaintiff has been represented by an attorney at each stage of these proceedings.
Bastardy proceedings have been termed "strictly civil in nature," M v. F, 95 N.J. Super. 165, 172 (Cty. Ct. 1967), or "criminal and quasi-criminal", Cortese v. Cortese, 10 N.J. Super. 152, 156 (App. Div. 1950), and the distinction between support and custody proceedings under N.J.S.A. 9:16-1, et seq. and bastardy proceedings under N.J.S.A. 9:17-1 et seq. seems not only unimportant but also more imaginary than real in this matter.
N.J.S.A. 9:16-2 provides that a child born out of wedlock shall have support and education from its father and mother to the same extent as if born in lawful wedlock. N.J.S.A. 9:16-3 permits proceedings to enforce support and education obligations of illegitimate children to be maintained by one parent against the other, by the person having physical custody of the child or, if the child is or is likely to become a public charge, by the director of welfare of the municipality or municipalities where the father and mother, or either of them, reside. Further, this section gives jurisdiction of such proceedings to those courts exercising jurisdiction in bastardy proceedings under N.J.S.A. 9:17-1 et seq. Finally, N.J.S.A. 9:16-4 makes the remedies of the two prior sections cumulative as to the remedies of N.J.S.A. 9:17-1 et seq., the bastardy statutes.
The Bastardy Act section controlling the institution of such actions, N.J.S.A. 9:17-2, provides in part that proceedings under it shall be maintained by a duly authorized representative of the State Board of Child Welfare, the county welfare board, or a director of welfare of the municipality where the woman is or of the municipality wherein she has a legal settlement, where an illegitimate child is or is likely to become a public charge.
It follows from the above that, under N.J.S.A. 9:16-1 et seq. (chapter 16) support and education obligations may be maintained by either parent or by the person having physical custody of the child, regardless of whether *191 the child is or is likely to become a public charge, and by the local director of welfare only if the child is or is likely to become a public charge; while, under N.J.S.A. 9:17-1 et seq. (chapter 17), only a public official can maintain the action, and only if the child is or is likely to become a public charge.
The municipal court judge, in his determination of the matter, found that the Essex County Welfare Board was making payments for the support of the child in question and was prosecuting the matter to gain reimbursement. Neither plaintiff nor the Essex County Welfare Board has disputed this finding. It stands uncontroverted and should not be disturbed. The consequence of such a situation, an illegitimate child being a public charge, is an election of remedies, an action under chapter 16 or one under chapter 17, available to plaintiff and to the Essex County Welfare Board, but obviously not to defendant. The objectives of the plaintiff and the Essex County Welfare Board are exactly the same, the support of the child and the reduction or elimination of a public charge, whether they proceed under chapter 16 or chapter 17. Additionally, Leonard v. Werger, 21 N.J. 539, 543 (1956) reviewed both statutes and concluded that chapters 16 and 17 were intertwined enactments, particularly with respect to the processing of an action under chapter 16 to accomplish its objectives. And, more recently, the Appellate Division, in Sarte v. Pidoto, 129 N.J. Super. 405 (1974), held that rights explicit under a chapter 17 proceeding were applicable inferentially to a chapter 16 proceeding. Insofar as this action is concerned, then, the differences between a chapter 16 and a chapter 17 proceeding are illusory and the selection of one or the other should not be permitted to work a prejudice to defendant. Therefore, although plaintiff and the Essex County Welfare Board attempted to create the fiction that this a civil proceeding under chapter 16, it must be treated as a quasi-criminal action under chapter 17.
*192 Not only does N.J.S.A. 9:16-4 support this treatment, but the various applicable rules of court mandate it. N.J.S.A. 9:16-3 requires support actions to be brought in courts having jurisdiction of bastardy actions and these courts, under the rules of court, are the municipal court, the county district court and the juvenile and domestic relations courts.
In the municipal court R. 7:9, "Bastardy Proceedings," states that the provisions of R. 5:5-9 govern bastardy proceedings; there is no mention of support proceedings. In the county district court R. 6:10, "Bastardy Proceedings," provides that R. 5:5-8 (support of illegitimate children) and R. 5:5-9 (bastardy proceedings) are applicable. In the juvenile and domestic relations court R. 5:5-8, "Support of Illegitimate Children, requires these proceedings to be in accordance with R. 5:5-3(b) which concerns itself with the measure of support for a child, but not with parentage; and R. 5:5-9, "Bastardy Proceedings," establishes the procedural guidelines for parentage or filiation actions.
The Newark Municipal Court has jurisdiction of this type proceeding and the complaint properly was filed there. Once in the municipal court, defendant was entitled to make, and did make, his pretrial, interlocutory motion, under R. 7:4-2(e), for blood-grouping tests of plaintiff, the child and himself, to establish a defense, and for the costs of the tests to be paid for by the State. His motion to have blood grouping tests was granted, but his motion to have the State pay the costs was denied. R. 3:24, "Appeals from Interlocutory Orders in Courts of Limited Criminal Jurisdiction," permits leave to appeal to the County Court from an interlocutory order entered before trial by a court of limited criminal jurisdiction. The municipal court is a court of limited criminal jurisdiction, the interlocutory determination was entered before trial, and this appeal is determinable by the County Court.
In the briefs filed in this matter and in the opinion of the municipal court, much attention was paid to the fact of defendant's alleged indigency, but this properly ought *193 not to be an issue before the court. The Supreme Court caused to be published on August 3, 1970, in the New Jersey Law Journal (93 N.J.L.J. 577), the following directive:
The attention of the Supreme Court has been called to the fact that in some instances judges have been questioning Legal Services attorneys as to their right to represent clients before the court. The Supreme Court is of the view that it is not the responsibility of the judge and should not be his concern whether a person represented by a Legal Service Project attorney is in fact eligible for such representation. The question of eligibility for representation by the Legal Services attorney is a matter for determination by those responsible for the operation of the Legal Services Offices and not the court.
The above directive remains in full force and effect. Defendant here is represented by Rutgers Urban Legal Clinic. It is a legal services project and has determined that the defendant is indigent and in need of its services. The issue may not be decided, but must be accepted, by the court.
Since defendant is an indigent, the concepts established in State v. Horton, 34 N.J. 518 (1961), and Rodriguez v. Rosenblatt, 58 N.J. 281 (1971), should be considered and utilized if applicable. In State v. Horton the Supreme Court considered the question of attorneys' fees for indigents in capital cases and reviewed in detail the history, in New Jersey, of the absolute right of counsel for an indigent criminal defendant. (A reading of this opinion evokes, of necessity, a deep sense of pride in, and appreciation for, earlier traditions). Pertinent to the interlocutory appeal at hand are the holdings of that case:
* * * the reasonable costs of necessary items such as experts, whether witnesses or not, medical examinations, scientific tests, photographs, depositions and transcripts, and, in essential circumstances, professional investigation, have been ordered paid from public funds by trial courts. The constitutional obligation to furnish counsel to an indigent can sensibly only be construed to include as well that which is necessary to proper defense in addition to the time and professional efforts of an attorney and we have no doubt of the inherent *194 power of a court to require such to be provided at public expense. [34 N.J. at 534]
Rodriguez v. Rosenblatt, supra, held that indigent defendants in disorderly persons proceedings in municipal courts were entitled to assigned counsel. It represents a reasonable and logical extension of State v. Horton, supra. The court there said (58 N.J. at 294) that there would be no inflexible constitutional compulsion to assign counsel without cost to indigents charged in the municipal courts with disorderly person or other petty offenses, but nonetheless considerations of fairness dictate that appropriate steps be taken to protect unrepresented indigent defendants against injustices which may result from their inability to cope fairly with municipal court charges against them. The court added (at 295) that, as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact, or other consequences of magnitude, without first having had due and fair opportunity to have counsel assigned without cost.
State v. Horton, supra, permits the reasonable costs of necessary items, including but not limited to scientific tests, to be paid from public funds on order of a trial court, if these tests are necessary to the proper defense of an indigent criminal defendant. Rodriguez v. Rosenblatt, supra, is aimed at achieving simple justice for an indigent defendant charged in a municipal court with a disorderly persons or other petty offense which, on conviction, carries a custodial sentence or other consequence of magnitude. In Rodriguez v. Rosenblatt the effort was one of limitation  not all of the offenses triable in a municipal court require the assignment of counsel, without charge, to an indigent defendant; the Supreme Court excepted many motor vehicle and municipal ordinance violations, among others. The polestar of Rodriguez v. Rosenblatt can be said to be "consequences of magnitude."
Defendant is an indigent with counsel serving at no cost to him; the matter is at least a quasi-criminal one cognizable *195 in the municipal court as well as the county district court and the juvenile and domestic relations court; the tests for which public payment is sought are scientific in nature, and the questions to be answered are: (1) are these tests reasonable and necessary to a proper defense, and (2) are the consequences of magnitude?
To answer the second question first, consider that an award for support of an illegitimate child against his father may range from $15 to $25 a week, according to an Essex County Juvenile and Domestic Relations Court judge. If these figures are extended over the span of life of an illegitimate child from birth to majority, without consideration of emancipation, a period of 18 years, a father can expect to be charged with $14,040 at $15 a week, and $23,400 at $25 a week. Imagination and application can vary these sums, depending on needs and life style. The precise point is that the defendant, here, could be liable for consequences of magnitude. The test ought not be confined to exposure for a custodial sentence for a disorderly persons conviction or to a loss of driving privileges for driving while impaired by use of alcohol, but, in simple fairness, should include, as well, exposure to the payment of support for an illegitimate child.
The first queston, the reasonableness and necessity of these blood-grouping tests as a proper defense, is best answered by Cortese v. Cortese, 10 N.J. Super. 152 (App. Div. 1950), where the Appellate Division mentioned N.J.S.A. 2:99-3 and N.J.S.A. 2:99-4, now N.J.S.A. 2A:83-2 and N.J.S.A. 2A:83-3, statutes authorizing blood grouping tests in paternity actions The court held (at 156) that N.J.S.A. 2:99-3 (N.J.S.A. 2A:83-2) was applicable to criminal and quasi-criminal proceedings, bastardy and filiation matters, and N.J.S.A. 2:99-4 (N.J.S.A. 2A:83-3) was applicable to civil matters where parentage was relevant. This latter statute was the foundation for the Cortese action, essentially a demand by a husband for blood grouping tests in a child support action in the Juvenile and *196 Domestic Relations Court. While the criminal statute, N.J.S.A. 2A:83-2, is involved in this appeal, the comments and findings of the Appellate Division in Cortese v. Cortese are equally forceful. The court there said:
The value of blood tests as a wholesome aid in the quest for truth in the administration of justice in these matters cannot be gainsaid in this day. Their reliability as an indicator of the truth has been fully established. The substantial weight of medical and legal authority attests their accuracy, not to prove paternity, and not always to disprove it, but "they can disprove it conclusively in a great many cases provided they are administered by specially qualified experts." [at 156]
The court then noted [at 157] that blood tests can now disprove paternity in over one-half of the paternity cases involving innocent men. This opinion was written over 25 years ago and it is entirely possible that the percentage has increased; but, even if it has not, blood tests must be said to be a vital and worthwhile tool in defense of a paternity action.
Accordingly, defendant not only is entitled to have the blood-grouping tests sought but also is entitled to have them paid for by the public.
N.J.S.A. 2A:83-2, the statute that Cortese v. Cortese applies to criminal or quasi-criminal paternity proceedings, is silent as to liability for costs of the blood tests. The Essex County Welfare Board claims a budgetary immunity and, indeed, Crist v. N.J. Div. of Youth and Family Services, 135 N.J. Super. 573 (App. Div. 1975), adequately supports this position since there have been no appropriations for blood-grouping tests. But, as observed above, the defendant is entitled to these tests and the court has the inherent power to require such to be provided at public expense. State v. Horton, supra, 34 N.J. at 534. Therefore, the costs of the tests and the required testimony of any witness in connection therewith will be charged to the County of Essex.
*197 Two recent County Court decisions are so persuasive as to be considered controlling in the reaching of this result. First, In re Gannon, 123 N.J. Super. 104 (1973), grants to an indigent patient, in a commitment proceeding, an independent psychiatric examination at county expense. Second, State v. Ryan, 133 N.J. Super. 1 (1975), involved an interlocutory appeal from a municipal court which denied an indigent defendant charged with having violated the provisions of N.J.S.A. 39:4-50(a), driving while under the influence of alcohol, the services of an expert witness without cost. The County Court (at 10) indicated clearly that it would have ordered the services of an expert witness without cost if defendant had met the threshold question of necessity for an adequate defense. In the present appeal defendant has met this issue and, under State v. Ryan, supra, qualifies.
Defendant's attorney will submit an order, consented to as to form or on five days notice, providing for:
1. The taking of the requested blood-grouping tests of plaintiff, defendant and the child.
2. Tests to be performed by a medical expert to be designated by the court and acceptable to plaintiff and defendant.
3. Expert testimony, if reasonably required, regarding the results of the blood grouping tests.
4. Costs of the tests and any testimony to be paid by the county.