647 A.2d 1337

IN RE REQUEST OF EVELYN BERMAN FRANK FOR PUBLIC DEFENDER REPRESENTATION.

Superior Court of New Jersey
Appellate Division

Argued September 20, 1994—Decided September 28, 1994.

Before Judges MICHELS, STERN and KEEFE.

*Burton L. Eichler* argued the cause for appellant Evelyn Berman Frank (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Mr. Eichler,* of counsel and on the brief).

*Edward M. Neafsey,* Assistant Attorney General of New Jersey, argued the cause for respondent State of New Jersey (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Mr. Neafsey,* of counsel and on the letter brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Defendant Evelyn Berman Frank appeals from (1) an order of the Law Division that denied her application for Public Defender representation in connection with her appeal from a judgment of conviction and order for commitment of the Law Division which revoked her probation and committed her to the custody of the Commissioner of the Department of Corrections (Commissioner) for three years in a matter entitled *State v. Evelyn Berman Frank*, A–4921–93T1, and (2) from an order denying her motion for reconsideration.

By way of background, on May 30, 1989, a state grand jury returned a twenty-five count indictment against defendant and others, including General Marine Transport Corporation, a closely-held corporation controlled by the Frank family. The first count of the indictment charged defendant and others with conspiracy to unlawfully release, discharge and abandon hazardous waste and other toxic substances into various waters in and around the waters surrounding New York and New Jersey and to unlawfully tamper with corporate records. The remaining counts of the indictment charged defendant and others with substantive crimes including record tampering.

On July 27, 1990, following plea negotiations, defendant pleaded guilty to the fourteenth count of the indictment which charged her with purposely and knowingly causing the unlawful release and abandonment of sewage sludge containing toxic pollutants and hazardous waste, namely biologically infectious and pathogenic bacteria, viruses and other organisms which pose a present and potential threat to human health, living organisms and the environment, into the waters of Newark Bay at or near the Passaic Valley Sewerage Commission sewage treatment facility, a crime of the second degree, in violation of *N.J.S.A.* 2C:17–2a(2), *N.J.S.A.* 2C:2–6 and *N.J.S.A.* 2C:2–7. As part of the plea agreement, the State recommended that this second degree crime be treated as a third degree crime for sentencing purposes. The State agreed that it would not dispute defendant's medical condition, particular-

ly in view of her age; that it would not appeal any ruling by the trial court that the presumption of incarceration under *N.J.S.A.* 2C:44–1(d) was overcome; that it would dismiss the remaining twenty-four counts of the indictment; and that in lieu of fines and restitutions, General Marine Transport Corporation would pay $1,000,000, plus interest over an agreed period of time. The plea agreement also provided that defendant would be permanently barred from any direct or indirect business participation by herself or through any other companies involved in the waste disposal industry.

On November 26, 1990, the trial court, in accordance with the plea agreement, sentenced defendant to a five-year probationary term. The following conditions of probation were imposed:

> The defendant cannot leave New York City except to report to the Probation Office in New Jersey; she cannot leave the State of New York without permission of the Probation Officer and the Court; she cannot have any contact, directly or indirectly with any existing businesses, corporations, entities, now or in the future; she must never again work for or keep in contact with any Frank family-owned operations in Bayonne, Staten Island or elsewhere; she is to have no relations, directly or indirectly with barges, tugboats or other vessels associated with her former businesses; there is to be no access to telephones, shortwave radios, or other types of communications with barges, tugboats or vessels and she is to perform 500 hours of community service per year as directed by the Probation Department. In essence defendant is forcefully retired.

In addition, the trial court assessed a $30 Violent Crimes Compensation Board penalty against defendant, and then dismissed the remaining counts of the indictment.

Defendant appealed, challenging two of the conditions imposed upon her probationary term: (1) the travel limitation prohibiting her from leaving New York State without permission of the Probation Officer and the trial court, except for reporting to the probation office in New Jersey, and (2) the restriction preventing her from working in any kind of business involving waste disposal and in all Frank family-owned businesses of any kind whatsoever.

On December 22, 1992, in an unpublished opinion in *State v. Frank*, A–2461–90T5, we affirmed the judgment of the conviction and order of commitment, holding, in part, that the challenged

conditions were reasonably related to defendant's rehabilitation and enforcement of the plea bargain and that they were not unduly restrictive of her liberty.

On or about April 22, 1994, the State charged defendant with violating the conditions of her probation in that she left the State of New York without the court's permission and was in the State of Florida on several dates in 1993 and 1994 and failed to divest herself of her stock interest in the Frank family corporations. Defendant was represented at the probation violation hearing by the Public Defender, without objection from the State. On May 6, 1994, at the conclusion of the hearing, defendant was found guilty of violating the terms of her probation. The trial court revoked defendant's probation and committed her to the custody of the Commissioner for three years.

Defendant appealed and requested the services of the Public Defender to represent her. Although the record is not entirely clear as to what transpired with respect to defendant's request for Public Defender representation, the Deputy Public Defender moved on behalf of defendant in the trial court for a stay of the sentence pending appeal. The trial court denied the motion, but stayed execution of the sentence for a short period to enable defendant to get her affairs in order. Again, there was no challenge to the Public Defender's representation of defendant by the State at this juncture.

On May 4, 1994, defendant, represented by the Public Defender, moved before this court for a stay of execution of the sentence pending appeal. Once again, the Public Defender's representation of defendant on appeal was not challenged by the State. On May 11, 1994, we stayed defendant's custodial sentence until the entire panel could hear argument on defendant's application, and accelerated the appeal. On May 16, 1994, following argument, at which time defendant was still represented by the Public Defender, we denied the motion for a stay of imposition of the custodial sentence pending appeal, but granted bail pending appeal. We remanded the matter to the trial court to conduct a bail hearing and to set

bail. On May 18, 1994, the trial court denied bail notwithstanding the clear mandate of this court to set bail. On the same day, we summarily reversed the trial court's order and again remanded the matter with direction that the trial court conduct a bail hearing in conformity with our prior order. Bail in the amount of $15,000 was set by the trial court, which was posted by a family friend. On or about June 14, 1994, defendant filed with the Administrative Office of the Courts a statement to establish indigency in support of her request for Public Defender representation in connection with her appeal. Defendant certified that she was employed for forty years as an officer of Standard Tank Cleaning Corporation until her forced retirement; that her only income was $1890 per month from social security; that her bank balance at the National Westminster Bank as of May 17, 1994 was $455.71; that she was paying rent of $2500 per month; that she had liabilities of $7500 for a mortgage; that she had outstanding loans to her children of over $100,000; that she owed John Barry, Esq., of Clapp & Eisenberg over $100,000 for attorneys fees; that she owed medical insurance premium payments of $1440 to AARP; that she owed utility bills of $87.93; that her subsistence expenses for food, clothing and transportation were $1795 per month; that there were outstanding judgments against her of $6,518,109; and that she owed taxes of approximately $639.50. Defendant further certified that she could not afford to pay for an attorney and that her relatives and friends could not help to pay for an attorney for her.

By letter dated June 20, 1994, the Assistant Director of Criminal Practice in the Administrative Office of the Courts recommended to the trial court that defendant's application to proceed as an indigent with Public Defender representation on the appeal be denied. On June 22, 1994, the trial court denied defendant's application. On June 24, 1994, the Public Defender was notified that defendant had been determined to not be indigent and that she did not qualify for Public Defender representation. Based on the trial court's denial of Public Defender representation of defen-

dant, the Public Defender moved to be relieved as counsel for defendant. On July 12, 1994, we granted this motion.

On July 13, 1994, defendant, through a family friend, Burton L. Eichler, Esq., who advised that he was representing defendant without charge, moved for reconsideration of the denial of her application for Public Defender representation. Mr. Eichler asserted that defendant had been residing in a New York apartment, which was leased in the name of her son-in-law, because she did not have the means or credit standing to obtain a lease; that her son-in-law was no longer able to pay the rent for the apartment; that the rent was in arrears; and that the landlord sought to evict defendant. Mr. Eichler further asserted that defendant moved out of the apartment and now resides with her daughter and family in her daughter's apartment, for which she does not pay rent; that defendant's only source of income is from her social security check in the amount of $1890 per month; and that the social security funds have been levied upon by the State of New York. Mr. Eichler also explained that defendant had been using her social security income to live on and that although her living expenses had been supplemented by her children, they are no longer able to contribute to such expenses or to contribute to defendant's legal defense.

Mr. Eichler confirmed that judgments against defendant in excess of $6,000,000 remain unpaid; that defendant has not paid the $250,000 balance of the guarantee covering the fines levied against the family company; and that defendant still owes Mr. Barry over $100,000 for legal fees for services rendered to defendant over two years ago. Finally, Mr. Eichler asserted that defendant is unable to meet her own living expenses and is now "an elderly, financially ruined individual who needs and is entitled to Public Defender representation."

On July 26, 1994, the Assistant Director recommended to the trial court that defendant's application for reconsideration be denied. The Assistant Director relied upon, among other factors, that although the $15,000 bail was not posted by a member of the

family, it was posted through family connections; that the property manager informed his office that defendant owned a condominium unit in the Atriums of Palm Beach Condominium Apartments in Palm Beach, Florida with a tax assessment of $253,800; and that the 1993 taxes of $5,730.75 were paid in full. The Assistant Director concluded that "it appears that defendant is engaging in a lifestyle that hardly appears indigent, therefore, we are not inclined to change our recommendation but submit this matter for your review." On July 29, 1994, the trial court denied defendant's request for the appointment of a Public Defender to represent her on the appeal.

By letter dated August 2, 1994, Mr. Eichler informed the trial court of certain claimed inaccuracies in the information relied upon by the Assistant Director in recommending the denial of the motion for reconsideration. Mr. Eichler asserted that defendant did not own the condominium unit in The Atriums of Palm Beach Condominium Apartments; that the unit was purchased by Standard Marine Cleaning Services, Inc., a corporation, the stock of which is and has always been owned by Jane Frank Kresch and Peter Frank; and that defendant never had any ownership in that corporation. Mr. Eichler further asserted that Standard Marine Cleaning Services, Inc., is currently in bankruptcy, and enclosed a copy of portions of the voluntary petition filed in the United States District Court for the Southern District of New Jersey, signed by Susan Frank, as President, which listed Peter Frank and Jane Frank Kresch as the equity holders of the corporation and the condominium unit as owned by the corporation. Mr. Eichler also attached an affidavit from Bess Kresch, a close personal friend of defendant, who averred that she posted the $15,000, from moneys in her savings account, and that she understood the money would be returned when defendant appeared in court. On August 5, 1994, defendant appealed and we accelerated the appeal.[1]

---

[1] While this appeal was pending, Mr. Eichler furnished us with a photostatic copy of a warranty deed, dated July 27, 1981, pursuant to which The Atriums of Palm Beach Associates, II, Inc., conveyed the condominium unit to Standard

Defendant seeks a reversal of the order denying her application for Public Defender representation, and the entry of an order declaring that she is indigent and entitled to Public Defender representation.

Defendant contends that the United States and New Jersey Constitutions and laws guarantee her the right to counsel; that she is indigent under the New Jersey Public Defender Act; and that in determining that she was not entitled to assigned counsel, the trial court did not undertake a proper investigation.

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel in order to protect her fundamental right to a fair trial. *Strickland v. Washington,* 466 *U.S.* 668, 685, 104 *S.Ct.* 2052, 2063, 80 *L.Ed.*2d 674, 691 (1984); *Faretta v. California,* 422 *U.S.* 806, 807, 95 *S.Ct.* 2525, 2527, 45 *L.Ed.*2d 562, 566 (1975); *Gideon v. Wainwright,* 372 *U.S.* 335, 340, 83 *S.Ct.* 792, 794, 9 *L.Ed.*2d 799, 802 (1963); *Powell v. Alabama,* 287 *U.S.* 45, 66, 53 *S.Ct.* 55, 63, 77 *L.Ed.* 158, 169 (1932); *State v. Fusco,* 93 *N.J.* 578, 583, 461 *A.*2d 1169 (1983); *State v. Sugar,* 84 *N.J.* 1, 15–16, 417 *A.*2d 474 (1980). In addition, Article 1, paragraph 10 of the New Jersey Constitution guarantees defendants the right to counsel in New Jersey. *State v. Fusco, supra,* 93 *N.J.* at 583, 461 *A.*2d 1169; *State v. Sugar, supra,* 84 *N.J.* at 15–16, 417 *A.*2d 474. The federal guarantee of the right to counsel has been found to arise from a "recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when

---

Marine Cleaning Services, Inc., and a certification of Edward Waldman, the property manager of the apartments, dated August 10, 1994, certifying that the unit is and has always been owned by Standard Marine Cleaning Services, Inc. These documents were not furnished to the Administrative Office of the Courts or the trial court while the matter was before them. We do not comment on the procedure for review of an application for Public Defender services, as no issue in this regard was raised on this appeal. *See generally, N.J.S.A.* 2A:158A–15.1 and *N.J.S.A.* 2A:158A–15.2. *Cf. State v. Nilsen,* 214 *N.J.Super.* 23, 25–27, 518 *A.*2d 240 (App.Div.1986).

brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Johnson v. Zerbst,* 304 *U.S.* 458, 462–63, 58 *S.Ct.* 1019, 1022, 82 *L.Ed.* 1461, 1465–1466 (1938). *See also State v. Crisafi,* 128 *N.J.* 499, 509, 608 *A.*2d 317 (1992); *State v. Guerin,* 208 *N.J.Super.* 527, 532, 506 *A.*2d 743 (App.Div.1986).

The New Jersey Supreme Court has expressed similar considerations. In *Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 295, 277 *A.*2d 216 (1971), it was stated that "[t]he importance of counsel in an accusatorial system such as ours is well recognized. If the matter has any complexities the untrained defendant is in no position to defend himself and, even where there are no complexities, his lack of legal representation may place him at a disadvantage." Since the assistance of counsel is necessary to ensure fairness and due process in criminal proceedings, a convicted defendant may not suffer imprisonment unless counsel was available to her at every "critical" stage of the adversarial process. *Kirby v. Illinois,* 406 *U.S.* 682, 687, 92 *S.Ct.* 1877, 1881, 32 *L.Ed.*2d 411, 417–18 (1972); *State v. Sugar, supra,* 84 *N.J.* at 16, 417 *A.*2d 474; *State v. Guerin, supra. See also State v. McCombs,* 81 *N.J.* 373, 408 *A.*2d 425 (1979).

New Jersey has long held that the right of an accused who is indigent to have counsel assigned without charge is a fundamental right. *See State v. Rush,* 46 *N.J.* 399, 403–04, 217 *A.*2d 441 (1966); *Rodriguez v. Rosenblatt, supra,* 58 *N.J.* at 285, 277 *A.*2d 216; *State v. Horton,* 34 *N.J.* 518, 522–24, 170 *A.*2d 1 (1961); *State v. Ballard,* 15 *N.J.Super.* 417, 420, 83 *A.*2d 539 (App.Div.1951), *aff'd* 9 *N.J.* 402, 88 *A.*2d 537 (1952). "Our State was perhaps the first to direct by legislation that where an indictment has been returned against a defendant who is indigent he shall be entitled to assigned counsel without costs." *Rodriguez v. Rosenblatt, supra,* 58 *N.J.* at 285, 277 *A.*2d 216. *See also State v. Horton, supra,* 34 *N.J.* at 522–23, 170 *A.*2d 1. In furtherance of this longstanding policy, our Legislature created the Office of the Public Defender in 1967 (*N.J.S.A.* 2A:158A–1 *et seq.; L.* 1967, *c.* 43, § 1) and

imposed upon the Public Defender the duty to provide legal representation to any indigent who was formally charged with the commission of an indictable offense. *N.J.S.A.* 2A:158A–5. *See In re Spann Contempt,* 183 *N.J.Super.* 62, 66, 443 *A.*2d 239 (App.Div. 1982).

Our rules of court also provide that "[e]very person charged with an indictable offense shall be advised by the court of his right to retain counsel and to have the Office of the Public Defender represent him if he is indigent." *R.* 3:27–1. The rules further assure that all persons convicted of an indictable offense who are not represented by the Office of the Public Defender and who desire to appeal, and who assert that they are indigent, shall be referred to the Office of the Public Defender, which shall represent them on such appeal. *R.* 2:7–2. Further, a defendant represented by the Public Defender in the trial court is entitled to continued representation in all subsequent proceedings in any court. *R.* 2:7–4.

■   Thus, it is firmly established in this State that an indigent defendant convicted of an indictable offense is entitled to assigned counsel on appeal without cost. The issue, therefore, is whether defendant was indigent at least by the time she filed her notice of appeal, thereby entitling her to Public Defender representation in connection with her appeal.

An "indigent defendant" is defined by the Public Defender Act to mean "a person who is formally charged with the commission of an indictable offense, and who does not have the *present* financial ability to secure competent legal representation as determined by the factors in Section 14 of *P.L.* 1967, c. 43 (*C.* 2A:158A–14), and to provide all other necessary expenses of representation." [Emphasis Added]. *N.J.S.A.* 2A:158A–2. *N.J.S.A.* 2A:158A–14 provides:

> Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the defendant. Need shall be measured according to:
>
> a. The financial ability of the defendant to engage and compensate competent private counsel;

b. The current employment, salary and income of the defendant including prospects for continued employment if admitted to bail;

c. The liquid assets of the defendant, including all real and personal property and bank accounts;

d. The ability of the defendant to make bail and the source of bail posted;

e. Where appropriate the willingness and ability of the defendant's immediate family, friends or employer to assist the defendant in meeting defense costs;

f. Where appropriate an assessment of the probable and reasonable costs of providing a private defense, based upon the status of the defendant, the nature and extent of the charges and the likely issues;

g. Where appropriate, the ability of the defendant to demonstrate convincingly that he has consulted at least three private attorneys, none of whom would accept the case for a fee within his ability to pay; and

h. The ability of the defendant to provide all other necessary expenses of representation.

In the event that a determination of eligibility cannot be made before the time when the first services are to be rendered, or if an initial determination is found to be erroneous, the office shall undertake the same provisionally, and if it shall subsequently be determined that the defendant is ineligible it shall so inform the defendant, and the defendant shall thereupon be obliged to engage his own counsel and to reimburse the office for the costs of the services rendered to that time.

▆▆▆ Applying these criteria, we are satisfied that on this record defendant is indigent within the meaning and scope of the Public Defender Act and is entitled to Public Defender representation. The facts concerning defendant's indigency stand uncontroverted. The record shows that defendant does not have the ability to engage and compensate competent private counsel to represent her in connection with this appeal. Defendant does not have any income other than her social security payments of $1890 per month, while her living expenses, including medical payments, are approximately $1795 per month. Although defendant's living expenses have been subsidized to some extent in the past by her family, her family appears to be unable to continue to do so now. The fact that defendant's daughter permits her to reside rent free in the daughter's apartment does not remove defendant from the category of persons considered "indigent" under the Act. "Indigence is not equivalent to total destitution." *Barry v. Brower*, 864 *F*.2d 294, 299 (3d Cir.1988).

The record also shows that defendant does not have any assets. Contrary to earlier indications, defendant does not own a condominium unit in Palm Beach. The unit is owned by a corporation, the stock of which is not owned by defendant. There simply is no proof before us to show that defendant has any assets that could be liquidated to pay for private counsel. On the contrary, the record shows that defendant still owes judgments in excess of $6,000,000, an unpaid balance on the $250,000 guarantee of the $1,000,000 fine levied against the General Marine Transport Corporation, over $100,000 to her family and over $100,000 to Mr. Barry for legal fees.

In sum, it does not appear on this record that defendant has the financial ability to secure competent counsel to represent her in connection with this appeal or that her family or former corporate employer are either willing or able to now assist defendant in meeting her defense costs.[2] Moreover, the Deputy Attorney General indicated at oral argument that he cannot dispute the facts embodied in the presentation of defendant that defendant was in fact indigent at the time this appeal was filed.

Accordingly, we reverse the order of the Law Division denying defendant's application for Public Defender representation in connection with her appeal and direct that the Public Defender represent defendant on the appeal entitled *State v. Evelyn Berman Frank*, A-4921-93T1, subject to reimbursement by defendant pursuant to *N.J.S.A.* 2A:158A-14 on presentation of proofs by

---

[2] The New Jersey Supreme Court in a trilogy of cases has held that the Public Defender has an obligation under the Public Defender Act to pay for necessary ancillary services, such as expert defense witnesses and trial transcripts, for indigent criminal defendants even though they are represented by private attorneys retained by the family or by *pro bono* attorneys. *See Matter of Cannady*, 126 *N.J.* 486, 600 *A.2d* 459 (1991); *Matter of Kaufman*, 126 *N.J.* 499, 600 *A.2d* 465 (1991) and *State v. Arenas*, 126 *N.J.* 504, 600 *A.2d* 467 (1991). It necessarily follows, therefore, that even though an indigent defendant's family or friends may have provided some of the expenses incident to defending a criminal matter, such does not render the indigent criminal defendant ineligible for Public Defender representation.

either the Public Defender or the Attorney General establishing that defendant was ineligible for Public Defender representation.

We further direct that the Public Defender serve and file a brief and appendix and all necessary transcripts on behalf of defendant on or before 4:00 p.m. November 11, 1994. The State shall serve and file its brief and appendix on or before 4:00 p.m. December 12, 1994. Defendant may serve and file a reply on or before 4:00 p.m. December 23, 1994.

We direct the Clerk of the Appellate Division to set the matter down for oral argument at 10:00 a.m. on Tuesday, January 10, 1995, at the Appellate Division Courtroom, 5th Floor, Richard J. Hughes Justice Complex, Trenton, New Jersey, and to serve a copy of this judgment forthwith on the Public Defender.