654 A.2d 484

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. EVELYN BERMAN FRANK, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 10, 1995—Decided March 3, 1995.

---

Before Judges MICHELS, STERN and KEEFE.

*Michael B. Jones,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Mr. Jones,* of counsel and on the brief).

*Edward M. Neafsey,* Assistant Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General, attorney; *Mr. Neafsey* and *Robert E. Lytle,* Deputy Attorney General, of counsel and on the brief).

*The Association of Criminal Defense Lawyers* filed a brief *amicus curiae* (*Whipple, Ross and Hirsh,* attorneys; *John C. Whipple* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

On July 27, 1990, defendant pled guilty to count fourteen of a twenty-five count indictment charging her with "the unlawful release and abandonment of sewage sludge containing toxic pollutants ... which pose a present and potential threat to human health, living organisms and environment, into the waters of Newark Bay," in violation of *N.J.S.A.* 2C:17–2a(2), *N.J.S.A.* 2C:2–6 and *N.J.S.A.* 2C:2–7, a second degree crime. In exchange, the State recommended dismissal of the remaining twenty-four counts of the indictment and that the matter "be treated as a third degree for sentencing." The State also agreed that no fine would be imposed against defendant, it would "not dispute [the] criteria for overcoming [the] presumption of incarceration," it would "not

dispute Mrs. Frank's condition (medical and age) and will not appeal any such findings by the Court." [1]

On November 26, 1990, defendant was placed on probation for five years with the following conditions imposed, consistent with the negotiated disposition, embodied in the judgment:

The conditions of Probation are as follows: The defendant cannot leave New York City except to report to the Probation Office in New Jersey; she cannot leave the State of New York without permission of the Probation Officer and the Court; she cannot have any contact, directly or indirectly with any existing businesses, corporations, entities, now or in the future; she must never again work for or keep in contact with any Frank family-owned operations in Bayonne, Staten Island or elsewhere; she is to have no relations, directly or indirectly with barges, tugboats or other vessels associated with her former businesses; there is to be no access to telephones, shortwave radios, or other types of communications with barges, tugboats or vessels and she is to perform 500 hours of community service per year as directed by the Probation Department. In essence defendant is forcefully retired.

In imposing the sentence the trial judge found only one aggravating factor, "[t]he need for deterring the defendant and others from violating the law," and three mitigating factors, (a) that "defendant has no history of prior delinquency," (b) that "defendant is particularly likely to respond affirmatively to probationary treatment," and (c) that "imprisonment of the defendant would entail excessive hardship to herself because of her age, health and present physical condition." The judge found, consistent with *N.J.S.A.* 2C:44–1f(2), that "having regard to the character, age and physical condition of the defendant ... that incarceration would be a serious injustice which overrides the need to deter such conduct by others." The judge also found "ample support of the State's intention to support the applicability of a non-custodial presumption."

Defendant, seventy-five years old at the time of her plea, was chief operating officer of co-defendant General Marine Transport Corporation ("General Marine"), also doing business as Standard Marine Services, Inc. ("Standard Marine"), which also pled guilty and was ordered to pay a fine of $1,000,000. At the time of

---

[1] Neither party contests that the State's recommendation, therefore, was for a downgrade for sentence purposes under *N.J.S.A.* 2C:44–1f(2), and not an amendment of the count of the indictment to charge a third degree crime.

sentencing, the judge advised defendant of the conditions of probation. He told her:

> In essence, the conditions are, you probably already determined from some remarks that I made earlier, it will be a forced involuntary retirement on your part from any and all association, direct or indirect, businesswise or elsewise, from ever operating, conducting, being part of, supervising, controlling, and I can go on and on because any operations that you have with the sludge business, barge business, tank cleaning business, anything that you had been associated for the past 40 years.

The judge also indicated that:

> [T]he bottom line is complete severance of any employment, directly or indirectly, stockholding, directorship, offices, whatever it may be with General Marine Terminal, other corporations, other entities, other entities that are not even thought of today, now and for the term of your probation which is five years.
>
> .  .  .  .  .  .  .  .
>
> The bottom line is that you are completely severed from any contact whatsoever, directly or indirectly, be it yourself or through others, family members or friends or employees, from ever again participating in any vessels dealing with the waters, the kill, the ocean or wherever, from polluting or causing any pollution in our environment.

The judge further stated that:

> I believe you live in New York. Probation will be here in New Jersey. At some future time, when the certain circumstances are appropriate, it may be transferred to New York, but not immediately.
>
> [Y]ou will be permitted to come from New York to New Jersey to report, but you will not be permitted to leave New York City to go to Staten Island or Bayonne without the permission and the authority of the Probation Department and order of this Court.

Defendant acknowledged that she understood and would comply with the conditions.

Defendant's subsequent motions made in 1991, seeking to amend the conditions of probation, were denied insofar as they related to her ability to work and travel.[2]

---

[2] In her letter brief of February 1, 1991, defendant asked for reconsideration of certain significant conditions included in the Judgment of Conviction which deviate from the Court's pronouncements at the time sentence was imposed which are contrary to Mrs. Frank's plea agreement. Specifically, these conditions are (1) forced severance from *all* Frank family businesses, even those which are in no way whatsoever environmentally sensitive, and (2) restriction from New York City or State without specific permission from the Court and Probation Department.

On her direct appeal to us defendant contended that two of the conditions of her probation were unreasonable and unlawful. She challenged the limitation prohibiting her from travel outside of New York without permission and the restriction preventing her from working in "any kind of business involving waste disposal and in all Frank-family owned businesses of any kind whatsoever." In our opinion, filed December 22, 1992, we rejected these claims, stating:

> The travel and work-related conditions are well within the confines of the plea agreement. Without dispute, Mrs. Frank was the chief operating officer, the major figure in her family businesses, which were major polluters of the New York and New Jersey waters. The travel restrictions are designed to permit the probation department to conduct and maintain necessary supervision over defendant's whereabouts and activities.

> Moreover, defendant is not completely prohibited from ever leaving the State of New York except to see her probation officer in New Jersey. She is prohibited from travelling elsewhere without the court's permission. If defendant wants to spend part or all of the winter in Florida or part or all of the summer in Massachusetts, either for health reasons or because she wants to visit her grandchildren [as stated by her], she must ask permission. We must assume that such permission will not be unreasonably withheld.

> So too, the business restrictions imposed upon defendant are reasonably designed to assure that one of the basic conditions of the plea bargain will be enforced: That defendant will not be involved with her family or with others in the waste disposal business.

In the spring of 1994, defendant was charged with violating the conditions of her probation. In a "Notice of Motion to schedule a violation hearing and compel sworn testimony," returnable on February 25, 1994, the prosecutor attached an affidavit from Vincent Matulewich, Supervising State Investigator of the Division of Criminal Justice, Environmental Crimes Bureau, dated February 17, 1994. Therein, he referred to the 1994 Annual Update, Business Concern Disclosure Statement of Standard Tank Cleaning Corporation, which indicated its ownership by Standard Marine, which itself was owned by defendant, her brother and the estate of another brother. The State requested an evidentiary hearing at which defendant's son would be called to testify concerning "whether or not Evelyn Berman Frank still is an owner or

---

Significantly, on defendant's subsequent appeal we rejected her claims addressed to the scope of the conditions of probation and lack of conformity with the negotiated disposition.

shareholder of Standard Marine Services, Inc." The affidavit also attached information revealing that Standard Marine owned twelve subsidiaries and other related companies.[3]

The State subsequently filed an affidavit of Glen E. Herrington, an investigator in the Division of Criminal Justice, executed March 17, 1994, which indicated an investigation into defendant's visits to a condominium in Palm Beach, Florida on March 10, 1993, March 30, 1993, November 5, 1993, November 7, 1993, December 17, 1993 and January 6, 1994. The affidavit asserted that the travel was without permission.

An undated formal notice of violation prepared by the Probation Department was filed after the Herrington affidavit was executed. It was made returnable on April 22, 1994 and charged that "[d]efendant left the State of New Jersey without the court's permission, and was in the State of Florida on March 10, 1993; March 30, 1993; November 5, 1993; November 7, 1993; December 17, 1993 and January 6, 1994." It further provided that the court denied defendant permission to leave the State on November 16, 1993, and that "she did not ask for permission to leave the State on any of the other [specified] dates."

While the formal violation of probation notice was based on the unauthorized trips to Florida, it is clear that both the unauthorized travel and the non-divestiture of interest in family and barge businesses were asserted by the Attorney General as grounds for revocation by virtue of the affidavits served upon defendant long before the violation hearing of May 6, 1994. In fact, the original February 25, 1994 return date of the Attorney General's motion was adjourned until March 25, 1994, and then until April 22, 1994 so that defendant, by then claiming to be indigent, could apply for

---

[3] Apparently there had been prior attempts by the Attorney General to collect the unpaid $250,000 of the $1,000,000 fine imposed on defendant General Marine. Defendant had guaranteed to pay $500,000 of the fine. At the violation hearing, adjourned until May 6, 1994, it was made clear that the State did not seek revocation on the basis of any unpaid fine because none had been imposed on defendant, personally, as a condition of probation.

Public Defender representation.[4] On April 22, 1994, the matter was again adjourned at the request of the Public Defender so that she could "have more time to prepare for this violation of probation hearing." As to the scope of the notice, the judge made clear to defense counsel on April 22, 1994:

> So, therefore, when you say it's only confined to the [unauthorized travel], oh, no, they have notice specifically that it relates to more than that. It relates to the nonpayment of the complete fine,[5] it also relates to the fact that she is still a major stockholder in Standard Tank which she was suppose to have severed any and all ties directly or indirectly either in the management of the business or controlling it or for that matter as any type of stockholder. In addition thereto, true, that also the other violation is the contempt of this Court's order that she would be confined to her New York, at that time her apartment, I believe, on Park Avenue and that the Court considered, and that she would not leave there either, only to come to New Jersey to report for violation, probation hearings and so forth which she was suppose[d] to do.
>
> Now the question is whether or not she violated some of those provisions. So, she has notice personally and so does her son. Came [sic] here and acted pro se who's also an attorney in the State of New York. So, this hearing is not strictly confined to that document that you're referring to [the formal notice of the Probation Department].

The matter was adjourned for a hearing on May 6, 1994.

In her letter brief of April 29, 1994, counsel for defendant claimed that the "trips to Florida were not forbidden ... at the sentencing hearing, and the alleged vacations do not amount to a failure to comply with a substantial requirement of a condition of probation...." Defendant opposed "the introduction of any additional alleged probation violations [of] which she was not notified," in the formal Notice of Violation prepared by the Probation Department, thus objecting to a violation of probation premised upon her failure to sever business relations. However, in contending that the restrictions imposed on defendant's travel were not "substantial" conditions of probation, defendant contended that the essential restrictions imposed upon defendant as a condition of

---

[4] We upheld the designation of the Public Defender as counsel for purposes of this appeal. *In re Frank,* 276 *N.J.Super.* 269, 647 A.2d 1337 (App.Div.1994).

[5] As noted in footnote 2, *supra,* non-payment of the fine imposed on the corporation was not pursued as a ground for revocation.

probation were "devoted almost entirely to removing Mrs. Frank from the waste disposal industry."

Defendant also sought to have the judge disqualify himself because he might be a witness and because of the judge's perceived attitude about defendant's lifestyle. She so argued at the May 6, 1994 hearing. She again argued that the hearing had to be limited to the only basis for violation referred to in the formal notice. On the merits, defendant asserted she was "effectively severed from all relationship with Frank family businesses," [6] she was restricted by longstanding agreements (dating back to 1972) from initially selling her interest outside the family, and in any event she could not "get rid of shares that nobody wants" despite her efforts "to divest herself of any interest as a shareholder in any of these businesses."

Defendant also asserted that the judge never prohibited travel to Florida at the time of sentencing, that the transcript controlled over the judgment and that, in any event, the travel restriction was "not a substantial condition of probation." She further suggested that withholding travel requests would have been "unreasonable" and therefore could not be a basis for violation under our prior opinion.

The judge declined to recuse himself. He indicated that references to defendant's lifestyle were in the context of the sentence and unpaid corporate fine. [7] He also made clear that the probation officers could be called to testify about permission for out-of-state travel, and that his testimony was not required. The judge

---

[6] On May 18, 1994, Burton Eichler, Esq., became "trustee for all shares of stock in Standard Marine Services, Inc.[,] held by Mrs. Evelyn Berman Frank, whether in her own right or as trustee." Standard Marine is a "holding company the sole asset of which is all the stock of the corporation, collectively referred to as the 'Berman Family Corporations.'"

[7] Apparently the defendant had arrived for court proceedings in a limousine notwithstanding defendant's professed inability to pay the fine and claim of indigency.

further held that the grounds for revocation did not have to be limited to the single ground noticed by the probation officer.

The only witness was Investigator Herrington who was called by defendant to contest the conclusion in his affidavit concerning defendant's travel to a condominium in Palm Beach which was owned by defendant or a Frank family entity. After hearing the testimony and extensive arguments, the judge found defendant travelled out of state "without permission and/or consent." [8] The judge also found that defendant had not severed herself from business activities and that the family agreement limiting her ability to alienate stock "predate[d]" the sentence and did not excuse her violations. He found her conduct "contumacious" and that the conditions she violated were "substantial." He also found that because of "a total disregard of the Court's order" imprisonment was "the only method of punishment" that could be imposed. He thus revoked probation. *See N.J.S.A.* 2C:45-3a(4).

In imposing sentence the judge found that the mitigating factors, except for the absence of a criminal record, had dissipated because of defendant's contemptuous conduct. He concluded that her post-sentencing activities reflected no real health problem. He also found that the original aggravating factor, the need to deter defendant, survived.

The judge committed defendant to the custody of the Commissioner of the Department of Corrections for three years and stated that "all conditions of probation previously imposed are to remain the same and all fines and penalties remain the same." [9] The only penalty imposed on the original judgment was a penalty

---

[8] The judge found that permission had been granted on some occasions but not on dates alleged in the violation notice.

[9] We do not understand this phrase in the context of the custodial sentence, and no fine had been imposed on defendant individually. This phrase shall be deleted from the judgment.

for the benefit of the Violent Crimes Compensation Board in the amount of $30.

On this appeal defendant argues:

*POINT I*

DEFENDANT DID NOT INEXCUSABLY FAIL TO COMPLY WITH SUBSTANTIAL CONDITIONS OF HER PROBATION.

Introduction

A.   The Travel Restriction, As Enforced, Was Not a Reasonable Condition of Probation Within The Meaning Of The Statute Or This Court's Prior Ruling.

B.   Defendant Did Not Willfully And Inexcusably Violate The Business Restriction Due to Her Titular Ownership Of Stock In Standard Marine Services, Inc.

*POINT II*

JUDGE IULIANI ERRED IN DENYING DEFENSE COUNSEL'S REQUEST THAT HE RECUSE HIMSELF.

A.   The Judge Effectively Made Himself A Witness And So Should Have Disqualified Himself.

B.   Because Both Defendant and Defense Counsel Reasonably Questioned The Judge's Impartiality, The Judge Should Have Recused Himself.

*POINT III*

THE JUDGE'S UNWILLINGNESS TO GRANT AN ADJOURNMENT SUFFICIENT TO ALLOW DEFENSE COUNSEL TO PREPARE TO MEET THE CHARGES, COUPLED WITH THE FAILURE TO EVER PROVIDE DEFENSE COUNSEL WITH PROPER NOTICE OF DEFENDANT'S ALLEGED VIOLATIONS, DEPRIVED DEFENDANT OF HER RIGHT TO COUNSEL.

*POINT IV*

DEFENDANT'S SENTENCE WAS MANIFESTLY EXCESSIVE.

A.   Defendant's Probation Should Have Been Continued.

B.   A Proper Analysis of The Aggravating And Mitigating Factors Would Result In A Non–Custodial Sentence.

C.   Defendant's Response To The Court's Questions.

Our careful review of the record lead us to conclude that these contentions, and the arguments based thereon, are without merit and do not warrant consideration in a written opinion, *see R.* 2:11–3(e)(2), except as noted herein.

■   There can be no question that defendant was given adequate notice, well before the violation hearing was actually conducted, that the State was seeking revocation of her probation because defendant did not divest herself of her business interests

in addition to the unauthorized travel. However, while a violation proceeding must be commenced under *N.J.S.A.* 2C:45–4, not by a mere motion of the prosecutor, here the judge himself rejected defendant's claim directed to the limited scope of the notice two weeks before the revocation hearing was conducted and ruled that the matter would proceed on both grounds. Under the circumstances, we must reject defendant's claims directed to the inadequacy of the notice and scope of the proceedings. *See N.J.S.A.* 2C:45–4. *See also, e.g., State v. Lavoy,* 259 *N.J.Super.* 594, 614 *A.*2d 1077 (App.Div.1992); *State v. Reyes,* 207 *N.J.Super.* 126, 504 *A.*2d 43 (App.Div.), *certif. denied,* 103 *N.J.* 499, 511 *A.*2d 671 (1986) (regarding statutory and due process requirements of a violation proceeding).

■ Defendant contends that *inter vivos* family and will agreements limit her ability to divest herself of interest in the businesses and that she has substantially complied with the judge's intention to keep her from controlling the businesses. Her son had advised the court on the February 26, 1994 return date that his mother had "no involvement whatsoever" in the businesses and did not benefit from them. However, she could have exercised her equity rights, and we note that her legal claims were asserted over three years after she was placed on probation. The legal problems defendant now claims prohibit her compliance with the "centerpiece" of the probationary sentence should have been noted before she acknowledged and agreed to be bound by the conditions of probation, *see R.* 3:21–7(a); *N.J.S.A.* 2C:45–1f, on the direct appeal, or at least before the issue was raised by the Attorney General based on defendant's non-compliance with the condition. If defendant thought it was legally impossible to comply with the conditions imposed, she should have raised the issue in a timely fashion.

■ Defendant argues that the limitations imposed on her right to travel were unduly broad and unlawful. She further contends that the limitations in the judgment were inconsistent with the original sentence. We reject these claims. In her unsuccessful

1991 motions for reconsideration of her sentence, she sought modification of the conditions of probation. Among other things, defendant claimed that the travel restrictions, which she then considered a "significant" condition, were "particularly onerous for Mrs. Frank, who is a legal resident of the State of Florida and travels to her home there frequently." Defendant requested that "she be permitted to travel without permission within the New York—New Jersey area, and outside the area upon notification and approval of her probation officer." Moreover, on November 29, 1990, defendant executed the "Court Disposition and Instructions for Probation" form, and acknowledged that she "cannot leave NYC w/o permission from [the] probation department." In any event, there can be no doubt that on her direct appeal we rejected defendant's claims addressed to the scope of the conditions of probation and that after our opinion of December 22, 1992, in which we detailed the conditions which we upheld, defendant was well aware of the travel restrictions which were held to be reasonable. It seems clear, from our review of the record, that the trial judge found defendant in violation of her probation by virtue of her travel outside of New Jersey on dates after the filing of our opinion. The record supports the trial judge's findings.[10]

Not only was defendant advised of the conditions of probation at the time of the sentencing, but she acknowledged those conditions before being placed on probation. Pursuant to *R.* 3:21–7(a) and *N.J.S.A.* 2C:45–1d (now –1f), defendant signed and acknowledged the "Court Disposition and Instructions for Probation" form which governed her conduct while on probation. Under "Explanation of Conditions" which defendant acknowledged by her signature and agreed to comply with, defendant recognized her "[f]orced involuntary retirement," and "[c]omplete severance" from her business

---

[10] While no probation officer testified about the lack of permission for such travel, there was no claim of authorization. To the contrary, defendant asserted that it was not needed. In these circumstances due process did not require such evidence. In any event, with considerable candor, defendant's brief acknowledges that "on the evidence below, the judge could find that Mrs. Frank had gone to Florida without permission."

interests and any company which was involved in "environmental" work. Further, as noted, she acknowledged the travel restrictions. In essence, there is substantial evidence in the record as a whole to warrant the findings of the judge that defendant violated substantial requirements of probation and his revocation of the probationary sentence. *See State v. Peters,* 129 *N.J.* 210, 218, 609 *A.*2d 40 (1992); *State v. Sepulveda,* 253 *N.J.Super.* 447, 452, 602 *A.*2d 273 (App.Div.), *mod. o.g.,* 130 *N.J.* 589, 617 *A.*2d 1215 (1992); *State v. Reyes, supra,* 207 *N.J.Super.* at 137, 504 *A.*2d 43.

■ When defendant's probation was violated, she faced a presumptive seven-year sentence. While defendant was initially sentenced as a third degree offender under *N.J.S.A.* 2C:44–1f(2), this was premised on the findings of the court, which the State agreed not to contest, that "the mitigating factors substantially outweigh the aggravating factors and ... the interest of justice demand," a sentence to a "crime of one degree lower than that of the crime for which [she] was convicted." *N.J.S.A.* 2C:44–1f(2). The State's recommendation for such downgrade does not survive a violation of probation because the sentence must depend on a balancing of aggravating and mitigating factors at that time. *See State v. Vasquez,* 129 *N.J.* 189, 206, 609 *A.*2d 29 (1992); *State v. Baylass,* 114 *N.J.* 169, 553 *A.*2d 326 (1989).

■ *State v. Peters, supra,* and *State v. Vasquez, supra,* which concern the prosecutor's ability to waive a mandatory parole ineligibility term under *N.J.S.A.* 2C:35–7 for purposes of initial sentencing only, neither permit nor require adherence to the prosecutor's original recommendation under *N.J.S.A.* 2C:44–1f(2) after a violation of probation. Those cases deal with the prosecutor's power to make binding recommendations as to sentence under *N.J.S.A.* 2C:35–12 and the impact of such recommendation after a violation of probation. They have little application in this setting, but they do underscore the need for the proper exercise of judicial discretion in sentencing after revocation of probation. Furthermore, the original plea agreement does not survive a violation of probation. *State v. Vasquez, supra,* 129 *N.J.* at 204–

05, 609 A.2d 29; *State v. Ervin,* 241 *N.J.Super.* 458, 465–66, 575 A.2d 491 (App.Div.1989), *certif. denied,* 121 *N.J.* 634, 583 A.2d 328 (1990). Hence, even if the prosecutor had recommended that defendant again be placed on non-custodial probation, such recommendation would not be binding on the trial judge. To the contrary,

defendant may be sentenced to "any sentence that might have been imposed originally for the offense of which [s]he was convicted", *N.J.S.A.* 2C:45–3b, even though that sentence is above the maximum embodied in the original plea agreement, provided however, that the procedure at sentencing must now also conform to the dictates of *State v. Molina,* [114 *N.J.* 181, 553 A.2d 332 (1989) ], and *State v. Baylass, supra.*

[*State v. Ervin, supra,* 241 *N.J.Super.* at 469, 575 A.2d 491.]

Defendant pled guilty to a second degree crime, the presumption of imprisonment applied, *N.J.S.A.* 2C:44–1d, and defendant faced a presumptive seven-year sentence, *N.J.S.A.* 2C:44–1f(1)(c). After revoking defendant's probation, the trial judge was required to impose a sentence based upon the presumptive sentence and the balancing of the aggravating factors existing at the time of initial sentencing and the mitigating factors which survived the violation of probation. *See State v. Molina, supra,* 114 *N.J.* at 184–85, 553 A.2d 332; *State v. Baylass, supra,* 114 *N.J.* at 178, 553 A.2d 326.

Here the trial judge found one aggravating factor ("[t]he need for deterring defendant and others from violating the law") and one mitigating factor ("[t]he defendant has no history of prior delinquency"). He did not find that the mitigating outweighed the aggravating and did not suggest that he was "clearly convinced that the mitigating factors substantially outweigh[ed] the aggravating factors" or that "the interest of justice demand[ed]" a continued downgrade for sentence purposes. *N.J.S.A.* 2C:44–1f(2). Hence, there was no basis to downgrade the offense for sentence purposes after the violation of probation; to the contrary, the judge's statement of reasons seemed to suggest that he found that the aggravating factors now outweighed the mitigating. When the aggravating and mitigating are in equipoise, and defendant is convicted of a first or second degree crime with a presumption of

imprisonment, the presumptive sentence should be imposed. *See N.J.S.A.* 2C:44-1f(1). The presumption of imprisonment applies even on a downgrade from second degree to third degree for sentence purposes. *See N.J.S.A.* 2C:44-1f(2). *See also State v. Balfour,* 135 *N.J.* 30, 35-36, 637 *A.*2d 1249 (1994); *State v. O'Connor,* 105 *N.J.* 399, 405, 522 *A.*2d 423 (1987); *State v. Partusch,* 214 *N.J.Super.* 473, 476-77, 519 *A.*2d 946 (App.Div. 1987). In any event, the sentence was technically "legal" because the three-year term constitutes imprisonment within the range authorized for a second degree crime upon downgrade under *N.J.S.A.* 2C:44-1f(2).

■ The State does not cross-appeal from the imposition of the three-year custodial sentence, that is a sentence at the bottom of the range for a third degree crime. *See N.J.S.A.* 2C:43-6a(3); 2C:44-1f(2). In the absence of a cross-appeal, and because the defendant was told at the time of her plea that upon revocation she could be sentenced to a term of three to five years, *but see State v. Ervin, supra,* 241 *N.J.Super.* at 470, 575 *A.*2d 491,[11] we affirm the sentence imposed.

■ Defendant contends that she does not have the physical capacity to endure a prison sentence. While the judge made some references to defendant's physical condition at the violation hearing, neither defendant's medical condition, the ability to treat her in a custodial setting, nor any other relevant factor was examined in detail. We therefore affirm the judgment and sentence imposed, but do so without prejudice to consideration of this issue based on defendant's condition as of the date of the revocation or as it may have changed thereafter. *Compare R.* 3:21-10(b)(2). *See also, e.g., State v. Priester,* 99 *N.J.* 123, 132-36, 491 *A.*2d 650 (1985); *State v. Tumminello,* 70 *N.J.* 187, 193-95, 358 *A.*2d 769

---

[11] In taking defendant's plea on July 27, 1990, the judge advised defendant that upon a revocation she could be sentenced "anywhere between 3 and 5 years." However, at sentencing on November 26, 1990, the judge asked defendant if she understood that upon a violation of probation "the sentence then can be a minimum of five years in prison."

(1976); *State v. Verducci,* 199 *N.J.Super.* 329, 335–36, 489 *A.*2d 715 (App.Div.1985); *State v. Sanducci,* 167 *N.J.Super.* 503, 509–11, 401 *A.*2d 274 (App.Div.), *certif. denied,* 82 *N.J.* 263, 412 *A.*2d 770 (1979). The nature of the crime of which defendant was convicted, including the presumption of imprisonment, as well as defendant's medical condition and the ability to treat her in prison, are all relevant factors.

Independent of any issue regarding defendant's health, we are confident that a senior citizen committed to the custody of the Commissioner of Corrections can be reasonably accommodated, just like an inmate who reaches that status while in custody.

Defendant shall commence service of her sentence within thirty days of this opinion unless she files, within that time period, an application for reconsideration of sentence, accompanied by the appropriate and necessary supporting affidavits and documents, including relevant medical records. *Cf. R.* 3:21–10(c). We leave to the discretion of the trial judge all issues regarding the hearing, including the need for evidentiary proceedings, and the setting and continuation of bail pending any such hearing.